WHEELER, *Respondent,*
*v.*
INTERNATIONAL WOODWORKERS OF
AMERICA, NO. 3-12, *Appellant.*

547 P2d 106

*Bradford J. Aspell,* Klamath Falls, argued the cause for appellant. With him on the brief were Robert D. Boivin and Boivin & Boivin, Klamath Falls.

*Sam A. McKeen,* Klamath Falls, argued the cause and filed the brief for respondent.

TONGUE, J.

## TONGUE, J.

This is an action by a union member against his union for damages for breach of its duty to give him "fair representation" in a dispute with his employer which resulted in his discharge. The case was tried before a jury, which returned a verdict of $686.80 for loss of wages. Defendant appeals from the resulting judgment.

Defendant's primary contention is that the trial court erred in denying its motions for nonsuit and directed verdict on the grounds: (1) that jurisdiction of the court was "pre-empted" by federal law, i.e., the National Labor Relations Act, and (2) that there was no substantial evidence of fraud, deceitful action or dishonest conduct. Defendant also contends that the trial court erred in failing to strike allegations of plaintiff's complaint and in instructions to the jury.

Because of direct conflicts in the testimony we must bear in mind that, in determining whether there was sufficient evidence to support the verdict of the jury in favor of the plaintiff, all conflicts in the testimony must be resolved in his favor and he is also entitled to the benefit of all inferences which may be reasonably drawn from such evidence. *Cronn v. Fisher*, 245 Or 407, 416, 422 P2d 276 (1966).

*Summary of the facts.*

Plaintiff was employed by Weyerhaeuser Company in 1969 in its logging operations near Klamath Falls. He was also "camp committeeman" for the union on the job where he worked. As such, his duties included taking complaints from other employees and either helping to solve them or filing a grievance.

The union working agreement with the company provided that "disputes, grievances or complaints arising under or out of this Agreement shall be settled amicably without strike, lockouts or other stoppages of work"; that "the employee or employees concerned shall continue to work" under existing conditions, and

that such matters should be taken up as grievances and handled under the grievance procedure provided by the agreement. The agreement also included seniority provisions under which senior qualified employees were to receive "preference."

In September 1970 plaintiff worked as a "faller" in "falling" timber, as a "limber" in cutting limbs off felled trees and as a "bucker" in cutting them into log lengths. At that time there was some controversy whether a senior employee could properly be required to work as a "bucker" when there was "limbing" work to be done and a junior employee had been assigned to such work, which was considered easier work than "bucking." Plaintiff testified that because he was the camp committeeman men would "bring this subject up" and that he wanted to know what to tell them to do.

Plaintiff testified that at a meeting of the local union on September 26, 1970, "this subject came up through me" and he was told by the shop steward that "the thing to do is to sit down on your saw"; that another union official was also present (the local union president) and said "he told you what to do, do what he said" and "that's what you should do"; that he was not told that he might be fired if he did so, but was told that "I should do it and I should tell the other men to do it"; and that it was his "interpretation" of what he was told that "you have to do it" and that he took it to be a "direct order."

Three other witnesses who were present at the meeting testified that they also understood these instructions by the union officials to be a "direct order" to "sit on your saw."

The shop steward testified that he did not give plaintiff a "direct order to do this," but "advised" him that this was "the procedure to take" and told plaintiff that "he had a right to refuse to buck on the landing if he had seniority," and "to tell the foreman * * * that

he was not going to buck on the landing as long as there was a junior man limbing" and that "I told him not to work if he was denied his seniority."

The local president testified that he was also present. He corroborated some of the testimony of the shop steward and said that the problem was not "just a specific problem that bothered Mr. Wheeler," but that "the whole crowd was very much interested in this problem of seniority between limbers and buckers." He also testified that the working agreement provided that an employee should not stop work, but should "process" a grievance, and that this included a "seniority grievance."

The following Monday plaintiff was "put to bucking" by his foreman. He then told the foreman of the union meeting and "what was said." Plaintiff then did some "bucking," but when told "to buck another landing" he then "sat on his saw." Plaintiff was then told by his foreman that he was fired for refusing to work. This was confirmed the next day by the superintendent, who testified that plaintiff was fired for refusing to work and not following the grievance procedure. He was then out of work for 37 days.

The union took the matter through the grievance procedure in an attempt to have plaintiff reinstated— taking the position that he had been wrongfully discharged. According to the minutes of a subsequent meeting between the union and the company, the union representative stated: "He [plaintiff] accepted our advice and got bit."

It appears that the union negotiated diligently and in good faith in an attempt to have plaintiff reinstated with full back pay, taking the position that the dispute was one which did not concern plaintiff alone, but that the entire membership was vitally concerned over the issue and that plaintiff had the right to do what he did. Indeed, plaintiff's attorney stated to the union shop steward at the trial that "you did your best to get as much as you could for Mr. Wheeler." The company,

however, refused to agree with the union contention on the application of seniority in such a case and also refused to reinstate plaintiff with full back pay, despite a strike vote by the union.

The dispute was finally settled by reinstating plaintiff on probation for six months, with back pay for four weeks, but without back pay for 17 days. This settlement was approved by a majority vote of the union membership at a meeting at which plaintiff spoke against approval of the settlement. Again, plaintiff's attorney stated at the trial "I agree, it's a good settlement." Plaintiff then filed this action.

1. *Jurisdiction of state courts over "unfair representation" cases has not been "pre-empted."*

Defendant union contends that the conduct, as alleged in this complaint, was such as to result in "discrimination" against plaintiff as a union member; that such conduct constitutes an "unfair labor practice" by the union under the provisions of the National Labor Relations Act, 29 USC § 158(b)(2); and that jurisdiction over such "unfair labor practices" is vested exclusively by that statute in the National Labor Relations Board, with the result that jurisdiction of the Oregon courts over this case has been "pre-empted" by it, citing *Motor Coach Employees v. Lockridge,* 403 US 274 (1971), and *San Diego Unions v. Garmon,* 359 US 236, 245 (1959).

The Supreme Court of the United States, however, has recognized various exceptions to the general rule of federal pre-emption, including an exception for actions by union members against unions for damages for breach of the duty of "fair representation" in handling employee grievances, despite the fact that such conduct of a union might constitute an "unfair labor practice." *Vaca v. Sipes,* 386 US 171, 186 (1967). The court held in *Vaca* (at 188) that a union member may bring such an action against a union in a state court.

Subsequently, in *Motor Coach Employees v. Lock-*

*ridge, supra,* the court again expressly recognized the same exception to the general rule of federal pre-emption and (at 299) cited *Vaca* with approval as a prior holding to that effect. In *Motor Coach Employees v. Lockridge, supra,* however, the court applied the general rule of "pre-emption," as stated in *San Diego Unions v. Garmon,* rather than the exception as stated in *Vaca,* because no claim of "unfair representation" had been "asserted" in the trial court in *Lockridge,* which had instead been "submitted and tried on the interpretation of the [union] contract * * *." (See 403 US at 299-300.)

For these reasons we must reject defendant's contention that the Oregon courts have no jurisdiction over this case. To the same effect, see *Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U.,* 501 F2d 258, 265-66 (9th Cir 1974).

2. *Plaintiff offered sufficient evidence to support a finding by the jury that defendant's conduct was "arbitrary."*

Defendant next contends that even if the Oregon courts have jurisdiction in this case they must apply federal substantive law; that the federal courts have established a rule for application in actions for damages for "unfair representation," and that the evidence in this case, even when viewed in a light favorable to plaintiff, does not satisfy that rule.

We agree that the courts of this state must apply federal substantive law in such a case and that in doing so they are bound by the decisions of the federal courts on this subject. Upon examining such decisions, however, we find that the rule as stated by them is not entirely clear and that there are some inconsistencies in the various decisions by the federal courts on this subject.

Thus, in 1967 the rule was stated in *Vaca* for application in such cases (386 US at 193) that plaintiff must prove "arbitrary or bad faith conduct on the part of the

union in processing his grievance." In 1971, however, in *Motor Coach Employees v. Lockridge, supra,* the court, while citing and quoting that same language from its previous decision in *Vaca* with apparent approval (403 US at 299) then immediately went on to say that "[t]here must be 'substantial evidence of fraud, deceitful action or dishonest conduct,' " quoting from *Humphrey v. Moore,* 375 US 335, 348 (1964).

Because we are bound by the rules established by the federal courts on this subject, it is not for this court to attempt to reconcile the two statements, much less to state what we believe to be a proper rule for application in such cases. Instead, we must seek to divine the "federal rule" on this subject, whatever that rule may be.

In *Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U., supra,* the United States Court of Appeals for the Ninth Circuit considered what it also recognized (501 F2d at 263) to be "considerable confusion" on this subject, particularly in view of the treatment accorded by the Supreme Court of the United States in *Lockridge* to its previous decision in *Vaca.* The court in *Beriault,* after a discussion of this problem and the citation of decisions by other federal courts, concluded that a "bad faith standard" is not the proper rule for application in such cases and was not required by *Lockridge* but held (at 263-64) that the proper rule for application in such cases is still the rule as stated in *Vaca* (386 US at 190) that a union breaches the duty of "fair representation" when it is "arbitrary, discriminatory *or* in bad faith."

In *Beriault* the court also reaffirmed (at 264) its earlier holding that " 'the *Vaca* opinion's repeated reference to "arbitrary" union conduct reflects a calculated broadening of the fair representation standard'," quoting *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local 14,* 453 F2d 1018, 1023 n.8 (9th Cir 1972).[1]

---

[1] Among other discussions of this subject see Clark, The Duty of Fair Representation: A Theoretical Structure, 51 Tex L Rev 1119, 1122-126, 1132-141 (1973).

This court, in *Gilstrap v. Mitchell Bros. Truck Lines,* 270 Or 599, 529 P2d 370 (1974), *cert denied,* 421 US 1011 (1975), after a discussion of this same subject, reached the same conclusion by holding (at 608) that "[a] union may breach its duty of fair representation by *arbitrarily* refusing to press the employee's grievance or by handling it in a perfunctory manner."[2] (Emphasis added)

Indeed, in this case defendant makes no direct contention to the contrary and seems to concede that bad faith or fraud need not necessarily be proved and that "arbitrary" conduct may be sufficient by quoting,[3] with apparent approval, not only from *Vaca,* but also quoting[4] from *Dente v. International Organization of Masters, Mates and Pilots,* 492 F2d 10, at 12 (9th Cir 1973), *cert denied,* 417 US 910 (1974). Defendant also quotes[5] from our previous decision in *Fox v. Knight,* 221 Or 1, at 5, 350 P2d 177 (1960).

Defendant's primary contention is that "it does not appear that plaintiff actually challenged the defendant as being arbitrary, discriminatory or acting in bad faith," but that "[v]iewing the evidence in a light most favorable to plaintiff, he can be said to have relied on some questionable advice given him by the shop steward which ultimately worked to his disadvantage" and that "poor judgment or negligence could have been present, but this conduct does not rise to the level required by the case law cited above."

The breach of a union's duty of fair representation

---

[2] See also *Wagner v. Columbia Hospital District,* 259 Or 15, 26-28, 485 P2d 421 (1971).

[3] "[T]he court held that for plaintiff to prevail there must be proof of arbitrary or bad faith conduct on the part of the union. 386 US 171 at 189-190."

[4] "The court found * * * no evidence that the union * * * entered into conduct 'that could be characterized as arbitrary or discriminatory.' * * * 490 F2d 10 at 12."

[5] "As the court stated: '* * * Our inquiry must be limited to whether the union officials have been guilty of fraud, caprice, bad faith or have acted arbitrarily * * *.' 221 Or 1 at 5."

[ 381 ]

of its members ordinarily arises after a grievance has not only arisen, but is in the process of being handled by the union in the grievance procedure established under a working agreement. In this case, however, plaintiff contends, in effect, that although the grievance between him (and also other employees) and the company had not yet reached the grievance procedure, the grievance had in fact arisen; that the union's duty of "fair representation" required that it take up that grievance through the grievance procedure established by the working agreement and, conversely, that such being its duty, the union breached that duty when it gave an "order" to plaintiff to stop work, particularly when it knew that the contract prohibited all work stoppages and required that all grievances be handled through the contract grievance procedure.

Defendant does not contend that under these circumstances an "order" to an employee to refuse to work, in violation of the working agreement, would not constitute a breach of its duty of "fair representation," regardless of whether such an "order" was given "arbitrarily or in bad faith." Instead, defendant contends, in effect, that no such "order" was given, at least "arbitrarily or in bad faith."

■ Upon a review of the testimony in this case we hold that there was substantial evidence from which the jury could find as follows: that the question whether an employee working on the logging operation could exercise seniority so as to demand assignment to work as a "limber," rather than as a "bucker" was one of general concern to this local union and its members; that under the express terms of the working agreement all disputes "arising under or out of" that agreement, including disputes over seniority rights, were required to be handled through the grievance procedure provided by that agreement, and that meanwhile "the employee or employees concerned shall continue to work * * *"; that the union shop steward, because of the duties of that position, must have been well aware of these contract requirements and must have

known that an employee who refused to work because of a dispute over seniority could well be discharged for violation of those requirements; that despite this knowledge the shop steward admitted telling plaintiff that "he had a right to refuse to buck on the landing if he had seniority"; that he should "tell the foreman * * * that he was not going to buck on the landing as long as there was a junior man limbing" and that "I told him not to work if he was denied his seniority."

The jury could also properly find, in our opinion, that these instructions to the plaintiff by defendant's shop steward involved not merely "questionable advice," "poor judgment," or "negligence," as contended by defendant, but constituted conduct that was reckless, irresponsible and capricious to the extent of being "arbitrary" conduct within the meaning of the rule requiring the union, in the performance of its duty of "fair representation" of its members, to refrain from "arbitrary" conduct.

In our opinion, the jury could also find from the testimony of plaintiff and the other witnesses, if it believed such testimony, as it was entitled to do, that plaintiff considered these instructions to be an "order"; that in refusing to do "bucking" work the following Monday he acted in accordance with what he believed to be an "order"; and that his subsequent discharge and loss of wages was the result of following what he believed to be an "order," but what the jury could reasonably find to constitute arbitrary conduct in breach of defendant's duty to plaintiff of "fair representation."

For these reasons, we hold that the trial court did not err in denying defendant's motions for nonsuit and directed verdict.

3. *Any error in instructions relating to plaintiff's constitutional rights was not prejudicial.*

Defendant assigns as error the denial of its motion to strike allegations of the complaint that the settle-

ment agreement under which plaintiff was reinstated in his job violated his constitutional right to due process of law and in referring to that allegation in the instructions summarizing the complaint. Defendant points out that there was "no evidence of state action" in this grievance and that "procedural due process within the defendant organization was granted."

Similarly, defendant assigns as error an instruction that "the right to collective bargaining for wrongful termination of employment from the employer is a basic constitutional right," upon the ground that "there was no evidence whatsoever in this case that defendant terminated plaintiff's employment" and that the instruction was likely to mislead the jury and was thus prejudicial error.

Both of these assignments of error relate to an additional ground for recovery as alleged in plaintiff's complaint. In addition to alleging a breach of defendant's duty of "fair representation" by "arbitrary" conduct consisting of its "order" to plaintiff to refuse to work as a bucker, the complaint also alleged that the union breached its duty of "fair representation" in that its subsequent negotiations were "not made in good faith" and "failed to cause the reinstatement of the plaintiff to his job with full pay." The complaint also alleged as a third ground for relief that the "final agreement" under which plaintiff was reinstated was "beyond the rights and powers" of the union in that it required plaintiff to work for six months on a probationary status without his consent and as a condition of payment for wages lost during the time of his termination from employment and that even then the agreement provided for payment of only one-half of the wages lost during that period, thereby "violating plaintiff's constitutional rights under the due process clause of the Fourth [sic] Amendment of the Constitution of the United States."

In view of admissions by plaintiff's attorney at the time of trial that the union "did your best to get as

much as you could for Mr. Wheeler" and that "I agree, it's a good settlement," defendant might well have moved to strike and to withdraw from the jury *all* of the allegations relating to both of these additional theories for recovery. For the same reason, defendant might well have objected to any instructions to the jury on either of these additional grounds for recovery.

Defendant did not do so, however, but instead moved to strike *only* the allegation that the settlement agreement violated plaintiff's "due process rights" and objected only to the instruction on collective bargaining as a constitutional right.[6] At the same time, defendant itself requested instructions relating to the submission to the jury of these additional grounds for recovery. As a result, the trial court instructed the jury on this subject, based upon the instructions requested by defendant, that:

> "* * * If you find that the plaintiff through his Union Local 3-12, IWA, processed his grievance to the ultimate settlement and that his Union members voted to accept that settlement, then, that agreement is binding on the plaintiff unless you find that the defendant Union in the conduct of negotiation and settlement of the grievance acted in an arbitrary way or in bad faith conduct and *this arbitrariness or bad faith conduct must be proved by the plaintiff by substantial evidence of deceitful action or dishonest conduct,* mere negligence on the part of the Union in representing the plaintiff is not sufficient to find liability against the defendant Union. * * *" (Emphasis added)[7]

We are aware of the general rule to the effect that it is error to submit to the jury an allegation, such as a specification of negligence, for which there is no supporting evidence. In our view, however, this case does not come within that rule.

---

[6] Defendant also successfully moved to strike plaintiff's allegation that defendant's conduct violated plaintiff's rights under the involuntary servitude clause of the Thirteenth Amendment of the United States Constitution, a matter which is not involved in this appeal.

[7] At the conclusion of the trial defendant's attorney said that:

> "* * * I think the Court gave basically the instructions of the defendant and I don't think we have any exceptions on that."

■ It is true that the trial court, in its instructions summarizing the allegations of the complaint, made reference to the allegation in question, i.e., that the settlement agreement violated plaintiff's constitutional right to due process of law. We do not, however, consider this to constitute the "submission" of that allegation to the jury in view of the instructions by which plaintiff's contention relating to the settlement agreement was submitted to the jury.

By those instructions, which were given at defendant's request, the jury was told that it could not consider plaintiff's entire contention relating to the settlement agreement in the absence of "substantial evidence of deceitful action or dishonest conduct." Nothing was said in the instructions submitting that contention to the jury about plaintiff's allegation that the settlement agreement violated his constitutional rights.

■ It is also true that the court, elsewhere in its instructions, and without reference to this contention by plaintiff, told the jury that "the right to collective bargaining for wrongful termination of employment from the employer is a basic constitutional right." That instruction was purely abstract and thus was erroneous. Because, however, that instruction was not given in connection with plaintiff's contention that the settlement agreement violated his constitutional rights and made no reference to that contention, but was given separately and as a separate and abstract proposition of law, we believe that any error in giving that instruction was not prejudicial.

It follows, in our opinion, that any error in failing to strike the allegation in question was not prejudicial error. Cf. *Escobedo v. Ward,* 255 Or 85, 94-95, 464 P2d 698 (1970), and *Graves v. Sprinkel,* 250 Or 411, 413, 443 P2d 177 (1968). It also follows, in our opinion, that any error in the instructions to the jury was not prejudicial. Cf. *Bohle v. Matson Navigation Co.,* 243 Or 196, 202, 412 P2d 367 (1966).

For all of these reasons, the judgment of the trial court is affirmed.