[Civ. No. 41749. First Dist., Div. Four. Feb. 28, 1978.]

JOSE ROSALES, Plaintiff and Appellant, v.
GENERAL MOTORS CORPORATION et al.,
Defendants and Respondents.

COUNSEL

Michael E. Adams for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, Michael D. McSweeney, Howard R. Lloyd, Van Bourg, Allen, Weinberg & Roger, Michael B. Roger, Bari Stolmack and Stewart Weinberg for Defendants and Respondents.

OPINION

CHRISTIAN, J.—Jose Rosales appeals from a judgment by which the court dismissed his complaint against respondents General Motors Corporation, International Union, United Automobile, Aerospace and Agricultural Implemental Workers of America (United Auto Workers) and Local 1364 of the United Auto Workers. We affirm the judgment.

Appellant alleged that General Motors had breached the collective bargaining agreement which governed the terms of his employment, by refusing to permit him to exercise his rights, under the contract, to be transferred to a less strenuous job upon proof of physical disability. Appellant also alleged that the United Auto Workers and Local 1364 had breached their duty of fair representation in handling his grievance against General Motors. Damages were sought for lost wages.

Motions by respondents for summary judgment were submitted on the following stipulated facts:

Appellant was first employed by General Motors at its assembly plant in Fremont on December 18, 1968. Pursuant to the terms of a collective bargaining agreement between General Motors and United Auto Workers, appellant joined Local 1364 soon after he started work and remained a member in good standing.

Appellant's job involved assembly line installation of doors and cover plates on the left sides of 45 to 46 vehicles per hour. Appellant would install both left-side doors, each of which weighed an average of 45 pounds, on an average of nine 4-door vehicles per hour; he installed small cover plates on other vehicles passing his station. During any spare moments between vehicles, appellant was required to keep himself busy with other tasks.

While doing this work during 1971 and 1972, appellant suffered several injuries. On January 4, 1971, a door fell on appellant's toe; workers' compensation provided medical treatments and temporary disability payments. On June 2, 1971, appellant slipped while handling a door, suffering a hernia for which he underwent surgery. In April of 1972, a door fell on the previously injured toe. Appellant underwent medical treatment, received temporary disability payments, and was cleared by a General Motors doctor to return to work on May 30, 1972. Appellant worked for six days, but his toe was bleeding and painful so he stopped work. After obtaining further medical treatment, appellant returned to work on June 24, 1972.

Three times during 1972 (Feb. 27, Apr. 29 and Oct. 9) appellant asked to be transferred off the assembly line. These requests were denied, each time on the ground that appellant lacked sufficient seniority to bid successfully into a nonline job under the collective bargaining agreement.

On April 26, 1972, appellant was examined by his personal physician, Dr. Sunseri, who reported that appellant could not lift over 25 pounds because of complications attendant upon the hernia repair. Dr. Sunseri examined appellant again on September 15, 1972, and further reported that appellant had a 50 percent loss of lifting ability caused by constant pain in his hernia scar. Meanwhile, a physician at the plant had reviewed Dr. Sunseri's first report and on August 25 again cleared appellant for doorhanger work. On September 29, the plant physician reviewed the second report by Dr. Sunseri, noted his total disagreement with Sunseri's conclusion, and stated that appellant's hernia repair was excellent and without any residual disability.

During the fall of 1972, appellant was cited by his foreman on four occasions (Oct. 4, Oct. 28, Nov. 16 and Nov. 17) for violations of shop rule 15 ("refusal or failure to do job assignments"). The foreman alleged that on each of these occasions appellant had failed to perform his work properly on certain vehicles. The foreman imposed successively more severe disciplinary suspensions on appellant. Immediately following each of the four disciplinary citations, appellant went to his union committeemen and complained that his hernia and his toe injuries disabled him both from heavy lifting and from prolonged walking. Appellant acknowledged that shortcomings in his work performance had occurred but stated that these shortcomings stemmed from his disability or other factors not his fault. Appellant also asked the committeemen on

each occasion to file a grievance with the employer, demanding a disability transfer to lighter work pursuant to paragraph 72[1] of the collective bargaining agreement. On the first three occasions, a committeeman, J. Cope, prepared and filed grievances denying that appellant had failed to perform his work. On the fourth occasion, on November 17, 1972, R. Bertuccelli, who had replaced Cope as appellant's committeeman, filed both a grievance denying any shop rule violation and a grievance demanding a disability job transfer, pursuant to paragraph 72 of the collective bargaining agreement.

On October 20, and again on November 20, 1972, Dr. Sunseri examined appellant further and wrote notes stating that appellant was permanently unable to lift over 25 pounds due to complications of the hernia repair and disease of the injured toe.

On December 5, 1972, when appellant returned to work from the last disciplinary layoff, he showed several of Dr. Sunseri's statements to H. Dunn, a UAW representative; Dunn obtained appellant's assignment to a car-wiping job. On December 8, a plant physician again examined appellant, made note of the reports of Dr. Sunseri, and again cleared appellant to do his doorhanger job. Appellant was returned to his doorhanger job on December 15. Appellant protested the job change, was immediately reexamined by the plant physician and was again cleared for his doorhanger job. He was then given the alternatives of immediately resuming doorhanger work or taking unpaid sick leave until ready to resume work. Appellant chose unpaid sick leave.

On December 22, 1972, appellant returned to the plant with a note, dated December 18, from Dr. Sunseri. The note stated that appellant permanently could not lift more than 25 pounds due to his previous hernia operation and disability in his left large toe. On the same day, appellant was again evaluated by the plant physician and cleared to do his regular job without restrictions. He did not return to work.

---

[1]Paragraph 72 of the collective bargaining agreement provides:
*"General Provisions Regarding Seniority . . .*
. . . (72) Any employe who has been incapacitated at his regular work by injury or compensable occupational disease while employed by the Corporation, will be employed in other work on a job that is operating in the plant which he can do without regard to any seniority provisions of this Agreement, except that such employe may not displace an employe with longer seniority, provided, however, that by written agreement between local Management and the Shop Committee, any such employe may be placed or retained on a job he can do without regard to seniority rules. Each three months the name, job classification and seniority date of employes covered by such agreement will be furnished to the Chairman of the Shop Committee."

In March of 1973, the four grievances, asserted by appellant, denying the allegations of the four disciplinary citations, progressed to step two of the grievance process.[2] Committee chief Herrera prepared a lengthy, written statement detailing the union's position on each of appellant's grievances; management prepared similar statements detailing its position. As to the disciplinary citations for October 28 and November 16, Herrera alleged that appellant's deficiency in job performance was caused by his heavy lifting disability, noting that the doors weighed about 20 pounds more than the 25-pound lifting restriction imposed by Dr. Sunseri. Herrera also pointed out that appellant had filed a paragraph 72 grievance, which was "currently in the procedure." As to the disciplinary citations for October 6 and November 17, Herrera's statements denied that appellant's job performance had been deficient.

During November of 1972, the paragraph 72 grievance was processed through step one of the grievance procedure, involving review by the foreman and general foreman; the grievance was denied by both. The union then held the grievance in suspense pending the outcome of appellant's four disciplinary grievances.

During May or June of 1973, appellant, representatives from the local union, and representatives from management attended an informal settlement conference during which certain alternative jobs were offered to appellant, on condition that he abandon his grievances against the four disciplinary citations placed on his record in October and November of 1972. For the purposes of summary judgment, appellant's contention, related in the stipulated facts, must be accepted, that, at the

---

[2]The grievance procedure set forth in the collective bargaining agreement involves four steps. In step one, the aggrieved employee or his committeeman first takes up the grievance with the employee's own foreman. If the grievance is not adjusted by the foreman, the grievance is reduced to writing and signed by the employee. The committeeman is then required to take up the grievance with the general foreman. If the grievance is not adjusted at step one, it may then be referred to the union shop committee. In step two, the union shop committee does any needed investigation and then takes up the grievance with highest plant management. Paragraph 35 of step two of the grievance procedure of the collective bargaining agreement provides that "Written answers will be given by the Management to all written grievances presented by the Shop Committee." If the grievance is not adjusted at step two and the shop committee believes it has grounds for appeal from the Plant Management decision, the shop committee and plant management exchange detailed position statements on the grievance; copies are forwarded to the regional director of the international union. The regional director then reviews the case, makes any necessary investigation and determines whether an appeal shall be made to an appeal committee consisting of two union representatives and two company representatives. If an adjustment of the case is not reached at step three of the grievance process, it may be taken in certain cases to an impartial umpire for binding arbitration.

settlement conference, he was only offered other assembly line jobs which, although entailing less lifting, still involved extensive hurried walking without the frequent rests required for his injured toe. Appellant also refused to consider the alternative jobs offered because he was unwilling to abandon the four pending grievances and acquiesce in the retention on his record of the disciplinary citations.

In April of 1973, a representative of the international union, H. Dunn, took over responsibility for pursuing appellant's grievances to the step three level of the grievance procedure. Appellant's attorney wrote to Dunn twice in April offering to assist him in pursuing the grievances and to furnish further medical reports supporting appellant's claim of disability to perform doorhanger duties. Dunn wrote back to appellant's attorney stating that the grievance procedure did not provide for presence at the meeting of the employee or his attorney.

On June 6, 1973, in a meeting at which the four disciplinary grievances were being discussed, Dunn discovered that appellant had been terminated under paragraph 111(b) of the collective bargaining agreement for failing to return from sick leave. The union held the grievances open at the third step of the grievance procedure and phoned appellant to advise him to see his doctor and submit further medical evidence and a request for extension of his sick leave. On June 21, 1973, Dunn wrote to appellant, renewing his suggestion. Appellant subsequently obtained reports from Dr. Sunseri and submitted them as requested.

The four grievances concerning the disciplinary citations were then discussed in a meeting between the union and management. The grievances were resolved on the bases that appellant would not be terminated for failing to return from sick leave and would be reinstated to his job; his record would be cleared of the penalties imposed by the disciplinary citations given on November 16 and 17 of 1972, and appellant would receive two weeks' pay. Appellant rejected this settlement of his grievance because it did not guarantee him a different job, he thought it failed to completely clear his record of disciplinary citations, and he was unsatisfied with the amount of back pay awarded.

In a special meeting between union committeeman Bertuccelli and general foreman Graves on August 17, 1973, Bertuccelli withdrew the four disciplinary grievances pursuant to the July 11, 1973, settlement; he also withdrew the paragraph 72 grievance, without prejudice to the

position of either party, because further pursuit of the latter grievance appeared to the union to be futile.

Appellant filed with the National Labor Relations Board an unfair labor practice complaint against the union. The complaint was rejected. The present litigation followed.

■ Appellant contends that the union's failure to carry his paragraph 72 grievance beyond step two of the grievance procedure was arbitrary and unreasonable and therefore violative of the union's duty of fair representation. (See *Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903].) He argues that his showing in opposition to the motions for summary judgment demonstrated the existence of a triable issue of material fact, i.e., whether or not the union's handling of his grievance constituted "arbitrary" conduct.

■ No affidavits or declarations were submitted by any of the parties, supporting or opposing the motions for summary judgment. Instead, the motions were submitted on the extensive and detailed stipulation which we have summarized above. Neither in the briefs nor in oral argument has it been suggested that additional evidence should be brought in; instead, the parties address themselves to the question whether the facts, as established by the stipulation, show that respondent unions acted arbitrarily and perfunctorily in handling appellant's grievances. Thus, summary judgment procedure was by tacit consent not followed, and the summary judgment standard of review is not pertinent to the present appeal. Because the parties submitted the case on stipulated facts, we shall review the judgment on the same basis. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 38, p. 2704.)

■ A union member's right to fair representation by the union is derived from federal statutes. (*Augspurger* v. *Brotherhood of Locomotive Engineers* (8th Cir. 1975) 510 F.2d 853, 857; see *Vaca* v. *Sipes, supra,* 386 U.S. at p. 177 [17 L.Ed.2d at p. 850].) It is a statutory duty "implied from the grant to the union by section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), of exclusive power to represent all employees of the collective bargaining unit." (Fns. omitted.) (*Retana* v. *Apartment, Motel, Hotel & El. Op. U., Loc. No. 14* (9th Cir. 1972) 453 F.2d 1018, 1021-1022; see *Beriault* v. *Local 40, Super Cargoes & Check. of I. L. & W. U.* (9th Cir. 1974) 501 F.2d 258, 263; *Sanderson* v. *Ford Motor Company* (5th Cir. 1973) 483 F.2d 102, 109-110.) Causes of action against the

employer and the union for breach of statutory duty are governed by federal law. (See *Vaca* v. *Sipes, supra,* 386 U.S. at p. 177 [17 L.Ed.2d at p. 350]; *Shaw* v. *Metro-Goldwyn-Mayer, Inc.* (1974) 37 Cal.App.3d 587, 597 at fn. 7 [113 Cal.Rptr. 617].)

■    Under the doctrine of fair representation, "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination·toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 177 [17 L.Ed.2d at p. 350].)    ■    A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member is arbitrary, discriminatory or in bad faith. (*Vaca* v. *Sipes, supra,* at p. 190 [17 L.Ed.2d at pp. 857-858].)    ■    A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, . . ." (*Vaca* v. *Sipes, supra,* at p. 191 [17 L.Ed.2d at p. 858].) However, a union is accorded considerable discretion in handling and settling grievances. (*Griffin* v. *International U., United Automobile, A. & A. I. W.* (4th Cir. 1972) 469 F.2d 181, 183.) ■    Where the collective bargaining agreement gives the union exclusive control over a grievance, the employee has no absolute right to have his grievance taken through the grievance procedure. (*Sanderson* v. *Ford Motor Company, supra,* 483 F.2d 102, 114; *De Arroyo* v. *Sindicato De Trabajadores Packing., AFL-CIO* (1st Cir. 1970) 425 F.2d 281, 283-284, fn. 2 at p. 284, cert. den., 400 U.S. 877 [27 L.Ed.2d 115, 91 S.Ct. 121].)    ■    Additionally, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious, . . ." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 195 [17 L.Ed.2d at pp. 860-861].)

■    The actions taken by the union on appellant's behalf are not in dispute. The record reveals that the union filed grievances on appellant's behalf challenging the four disciplinary citations; these grievances were pursued to step three of the specified procedure. The union also filed a paragraph 72 grievance on appellant's behalf which it pursued to step two of the grievance process. After the paragraph 72 grievance was denied by both the immediate and the general foremen, the union held the grievance pending the negotiations and outcome of appellant's other grievances. After settlement conferences between the union and management, the union obtained for appellant offers of alternative job assignments. In the July 11, 1973, settlement conference, the union secured appellant's reinstatement to his job after appellant had been terminated

for failing to return from sick leave. It also obtained a reduction in appellant's disciplinary citations and a small back-pay award. On the basis of its negotiations with management, the union eventually withdrew the paragraph 72 grievance without prejudice because it appeared to the union that further pursuit of the grievance would be futile. Although the results obtained by the union were evidently not satisfactory to appellant, the undisputed facts would not support a determination that he was arbitrarily or unfairly represented by the union. There is nothing to suggest that the union handled appellant's grievances in a perfunctory manner. The decision not to further pursue appellant's grievance was properly within the wide range of reasonable choice accorded to the union.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 30, 1978, and appellant's petition for a hearing by the Supreme Court was denied May 25, 1978.