[Civ. No. 53566. First Dist., Div. Two. Apr. 4, 1984.]

JULIETTE P. SARRO, Plaintiff and Appellant, v.
RETAIL STORE EMPLOYEES UNION, LOCAL NO. 410 et al.,
Defendants and Respondents.

COUNSEL

James Paul Green for Plaintiff and Appellant.

Davis, Cowell & Bowe, J. Thomas Bowen and Richard G. McCracken for Defendants and Respondents.

---

OPINION

MILLER, J.—A union member appeals from the dismissal of her complaint alleging that her union failed to adequately represent her in the grievance procedure after her discharge from employment. We conclude that the complaint does not state a cause of action under federal law for the breach of the union's duty to give union members "fair representation" and that the causes of action under state tort and contract law cannot be maintained in light of federal preemption of this area. Accordingly, we affirm the superior court's dismissal of the complaint.

After 10 years of employment, Juliette Sarro (hereafter appellant) was terminated from her position as head cashier at Grodins' department store on February 4, 1975.[1] At the time of her discharge, appellant was a member in good standing of Retail Store Employees Union, Local No. 410 (hereafter union). The union was notified of appellant's termination, it investigated appellant's grievance, and some time later a board of adjustment hearing was convened. This hearing, held before two representatives of the employer and two representatives of the union, was the first step in the grievance and arbitration procedure as outlined in the collective bargaining agreement between Grodins and the union. Appellant's interests were represented by an attorney she had personally retained, the president of the union, and the union's attorney. The parties were unable to effectuate a resolution of appellant's grievance at this hearing.

Shortly thereafter a second board of adjustment hearing was held. At this hearing, Grodins made a settlement offer to appellant which included (1) full reinstatement to her prior position with no seniority or pay loss; (2) transfer to another store; (3) half-day work schedule for one month to eval-

---

[1]Although the immediate cause of appellant's termination is unclear from the record, she had been cited by Grodins for the following infractions: smoking on the job, unsatisfactory work performance, incompetency, error in counting cash, incorrect writing of credit and not following company procedure. Appellant advised her union that she felt she was being singled out for discipline by her immediate supervisor and that the warnings were not justified.

uate appellant's performance and serve as an adjustment period; (4) retroactive contributions to appellant's pension fund to keep her account current; and (5) payment of $750, the difference between appellant's unemployment benefits and her salary, to compensate appellant for lost wages during the period of her unemployment. Appellant's consideration for Grodins' offer was to be not only acceptance of these terms as full settlement of the labor contract grievances, but, in addition, a waiver of all her rights against Grodins, whether based upon contract, tort, or otherwise.

Upon her attorney's advice, appellant refused to accept this offer. The president of the union attempted to persuade her otherwise. Appellant was subsequently notified that the union members of the adjustment board had voted to accept Grodins' offer. Appellant sought to bring the matter to arbitration. When it became apparent that the union had taken no action in this regard, she informed the union that she was prepared to return to work under the terms of Grodins' offer. On approximately November 8, 1975, appellant returned to work. Because of physical injuries sustained in an automobile accident in June, appellant had difficulties performing her duties and she had to return home on sick leave after only 11 days.

Appellant informed the National Labor Relations Board of her belief that she was discharged by Grodins because of her activities on behalf of the union and that the union had failed to fairly represent her in processing her grievance. In response to appellant's complaint against the union's handling of her grievance, the National Labor Relations Board informed appellant that the company's "willingness to restore her to eventual full-time employment with no loss of seniority or other fringe benefits, and a substantial lump-sum payment, could not be found in derogation of the Union's statutory obligations." The complaint against Grodins was similarly rejected. The present litigation followed.

In February of 1976 appellant filed an action for damages in the Superior Court for the County of San Francisco against the union, certain officials of the union, Grodins, and appellant's immediate supervisor at Grodins at the time of her termination. In August of 1977, at appellant's request, the action was dismissed as to Grodins and its employee. The union interposed a demurrer to what was left of appellant's action on July 27, 1979. On October 1, 1979, the demurrer was granted with leave to amend as to six causes of action alleged by appellant against the union and its officials. Appellant's claims for intentional and negligent interference with prospective economic advantage survived appellant's challenge.

On November 14, 1979, an amended complaint (hereafter complaint) was filed by appellant against the union and its officials. Because its sufficiency

to state a cause of action is the subject of the present appeal, we will treat it in some detail. In count one appellant charges the union and its officials with breach of the collective bargaining agreement. Specifically, the union "in substantial violation of her rights under the . . . [a]greement, arbitrarily, capriciously and/or in bad faith failed to process Plaintiff's said grievance . . . ." As a result of this breach of the collective bargaining agreement, appellant was unable to have her grievance presented to an impartial arbitrator.

In count two appellant charges the union and its officials with breaching the implied covenants of good faith and fair dealing in the collective bargaining agreement "by failing to act in good faith in processing plaintiff's said grievance." This breach allegedly resulted in appellant being "deprived of her right to obtain a full and fair consideration and determination of her said grievance."

In count three appellant charges the union and its officials with fraud in falsely representing to appellant that they "would actively pursue and were actively pursuing the grievance . . . and that such pursuit included forcing said grievance to arbitration . . . ." In count four appellant basically realleges the facts as outlined in count three but charges the union and its officials with negligent and reckless misrepresentation in promising to pursue her grievance.

In count five appellant charges the union and its officials with breaching their duty of fair representation by "arbitrary, capricious, in bad faith, deceitful, dishonest and discriminatory" acts in connection with their processing of appellant's grievance.

In count six appellant alleges that the union and its officials intentionally performed and/or failed to perform acts "for the purpose and design of disrupting the economic and advantageous business relations by and between plaintiff and her employer . . . for the purpose of depriving her of said employment." Specifically, the union failed to undertake and pursue her grievance. In count seven appellant basically realleges the facts as outlined in count six, but poses a claim of negligent interference by the union and its officials with her business relationship with her employer.

The union set forth a demurrer to the first five counts of appellant's complaint on the grounds that the facts alleged did not show a breach of the federal duty of fair representation and that the state law theories were preempted by federal law. On March 17, 1980, the superior court sustained the demurrer without leave to amend to appellant's allegations of fraud (count three) and negligent misrepresentation (count four). The union's de-

murrer to appellant's allegations of breach of contract (count one), breach of covenants of good faith and fair dealing (count two), and breach of the duty of fair representation (count five) was also sustained with the understanding that appellant would have 20 days in which to amend her complaint. As appellant has elected to pursue her appellate remedies rather than amend her complaint, it is presumed that she has stated as strong a case as possible against the union. (*Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 127 [185 Cal.Rptr. 878]; *Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; *Vaughn* v. *Certified Life Ins. Co.* (1965) 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].)

Counts six and seven, charging the union with intentional and negligent interference with prospective economic advantages, were not dealt with on demurrer. Finding that "the action has no merit and that plaintiff has presented no triable issue of fact," the superior court on December 31, 1980, granted the union's motion for summary judgment on these two remaining counts of appellant's complaint. We now consider appellant's contention that her complaint against the union and its officials was improperly dismissed by the superior court.

In *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the Supreme Court held that the National Labor Relations Act preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the act. However, the broad preemption principle of *Garmon* has been modified in subsequent cases and the Supreme Court has sanctioned the exercise of judicial power over specific conduct arguably protected or prohibited by the National Labor Relations Act. One of the most prominent exceptions to the *Garmon* rule recognized by the Supreme Court is illustrated by count five of appellant's complaint—a union member's charge that the union breached its duty of "fair representation" in handling a grievance. In *Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903], the court refused to apply the preemption doctrine to suits charging a breach of the union's duty of fair representation, even though the National Labor Relation's Board had held that such a breach was also an unfair labor practice. (*Miranda Fuel Company, Inc.* (1962) 140 N.L.R.B. 181.) Though one reason for this exception was that the duty of fair representation had been for the most part developed by the judiciary rather than the board, the other reason was concern over the possibility of denying a hearing to an employee who felt his individual interest had been unfairly subordinated by the union. The court expressed fear that, if the employee could not bring his complaint to the judiciary, ". . . the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair

labor practice complaint." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 182 [17 L.Ed.2d at p. 853].)

■ Accordingly, count five of appellant's complaint states an essentially good cause of action against the union that the Supreme Court has specifically held can be maintained in state court. However, the fact that state court may provide a forum for appellant's claim that the union breached its duty of fair representation does not displace the federal interest in seeing that the union's conduct is governed by a uniform standard. To reduce the potential for conflicting pronouncements, federal law governs the union's responsibility to represent appellant in the grievance procedure and we are bound by the decisions of federal court on this subject. (*Vaca* v. *Sipes, supra,* 386 U.S. 171, 174 [17 L.Ed.2d 842, 848]; see also *Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 299 [29 L.Ed.2d 473, 490, 91 S.Ct. 1909]; *Wheeler* v. *International Woodwkrs. of Am., No. 3-12* (1976) 274 Ore. 373 [547 P.2d 106, 110]; *Rosales* v. *General Motors Corp.* (1978) 78 Cal.App.3d 94, 102-103 [144 Cal.Rptr. 83].)

Appellant contends here, as she did in her opposition to the union's demurrer and motion for summary judgment, that she has shown under existing federal standards that the union has breached its duty of fair representation in the handling of her grievance. Upon a review of appellant's deposition testimony, her primary complaint against the union was that a union representative had promised her that the matter would be taken to arbitration and it was not.[2] Appellant believes that the reason her grievance was not taken through this final step was because the union lacked the necessary funds to finance the arbitration proceeding. In view of the offer by Grodins to reinstate appellant at full pay with all attendant benefits and to reimburse her for any wages lost during her period of unemployment, it is unclear exactly what arbitration could accomplish that would justify the additional time and substantial expense in instituting this procedure. Appellant herself seems uncertain of her motivation for seeking arbitration under the collective bargaining agreement.[3]

---

[2]The relevant portion of appellant's deposition testimony reads: ". . . [Mr. Ross] told me that I was not to worry, because he was going to pull strings, push buttons, and that everything would be taken care of. Arbitration would take place, and nothing happened. Absolutely nothing happened.

[3]Appellant was questioned on this point during the deposition: "Q. Why did you want an arbitration? [¶] A. Because I felt that would be the fair way of doing it. [¶] Q. Did you expect some result from the arbitration, other than the result that was reached in the settlement? [¶] A. Certainly. [¶] Q. What result? [¶] A. Complete and absolute absolvence of any wrongdoing. [¶] Q. Is it your understanding that is within the arbitrator's power? [¶] A. I would say it would be. I don't know what arbitrators do, but I would have to say he makes a decision one way or the other."

Appellant's other charges against the union include the delay in processing her grievance, the union's acceptance of a settlement that required her to work only 20 hours per week for the first month after her reinstatement, the union's failure to come to Grodins immediately upon learning of appellant's termination, and the union representative's tone of voice when he told her to accept the settlement.[4]

The United States Supreme Court in *Vaca* v. *Sipes, supra,* 386 U.S. 171, has placed a heavy burden on union members attempting to show a breach of the union's duty of fair representation in a grievance proceeding. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." (*Id.,* at p. 190 [17 L.Ed.2d at p. 857].) To maintain an action, appellant needs ". . . to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives . . . ." (*Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 301 [29 L.Ed.2d 473, 491].)

In *Vaca,* the court had an opportunity to evaluate a union member's complaint that his union had " 'arbitrarily, capriciously and without just or reasonable reason or cause' " refused to take his grievance to arbitration. (*Id.,* 386 U.S. at p. 173 [17 L.Ed.2d at p. 848].) The evidence revealed that the union diligently supervised the grievance into the fourth step of the bargaining agreement's procedure with the union's business representative serving as the employee's advocate through the proceedings. The union attempted to gather sufficient evidence to prove that the employee had been wrongfully discharged, it attempted to secure less vigorous work for the employee and it joined in the employer's efforts to have the employee rehabilitated. However, the union's efforts stopped short of seeking arbitration because the union made a determination that there was insufficient medical evidence to establish a wrongful discharge.

The Supreme Court flatly held ". . . that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of [the collective bargaining agreement], merely because it settled the grievance short of arbitration." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 192 [17 L.Ed.2d at p. 859].) Having concluded that the individual employee had no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and that a breach of the duty of fair representation

---

[4]Appellant makes conclusory allegations that the union's actions caused her to lose her pension benefits. However, the record indicates that it was agreed as part of the union's settlement of appellant's complaint against Grodins that the company would make retroactive contributions to the pension fund for the period of appellant's termination. Therefore, this court is at a loss to evaluate the union's responsibility in this regard.

was not established merely by proof that the underlying grievance was meritorious, the court concluded that the duty of fair representation had not been breached.

■ Viewing appellant's allegations in the light of governing federal standards, it becomes apparent that they do not present sufficient facts to show that the union's actions in settling her grievance were "arbitrary, discriminatory, or in bad faith." After two board of adjustment hearings between the union and appellant's employer, the union obtained for appellant a substantial settlement offer which included reinstatement with no loss of benefits or wages. The undisputed facts would not support a determination that appellant was arbitrarily or unfairly represented by the union. The decision not to pursue appellant's grievance to arbitration was within the considerable discretion afforded unions in handling and settling grievances. (In accord, *Logan* v. *Southern Cal. Rapid Transit Dist., supra,* 136 Cal.App.3d 116, 128-129; *Rosales* v. *General Motors Corp., supra,* 78 Cal.App.3d 94, 102-104; *Gutierrez* v. *Gaffers and Sattler Corp.* (1970) 4 Cal.App.3d 731, 736-737 [84 Cal.Rptr. 571].) Accordingly, we find that count five of appellant's complaint has failed to state a cause of action for the breach of the duty of fair representation. Hence, it was properly dismissed by the trial court.

We now examine the remaining counts in appellant's complaint alleging breach of contract (count one), breach of covenants of good faith and fair dealing (count two), intentional and negligent misrepresentation (counts three and four), and intentional and negligent interference with prospective economic advantage (counts six and seven). We do not determine whether appellant has alleged sufficient facts to constitute a cause of action against the union under all the respective theories of state law embodied in these counts. ■ The critical issue is whether, in the factual context of this case, federal labor law has preempted the state tort and contract law on which appellant predicates the remaining counts of her complaint.

In *San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, the court explained federal labor law's dominance over state law in regulating conduct allegedly constituting an unfair labor practice: "To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes." (*Id.,* at p. 244 [3 L.Ed.2d at pp. 782-783], fn. omitted.)

*Garmon* makes it clear that preemption of state law is a safeguard against conflicting regulation of identical conduct.

More recent Supreme Court cases indicate, however, that inflexible application of the *Garmon* doctrine is to be avoided, especially where the state has a substantial interest in regulating the conduct at issue and the state's interest is one that does not threaten undue interference with the federal regulatory scheme. (See, e.g., *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745]; *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056]; *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657]; *United Workers* v. *Laburnum Corp.* (1954) 347 U.S. 656 [98 L.Ed. 1025, 74 S.Ct. 833].)

For the purpose of this decision, the most instructive of these cases is *Farmer* v. *Carpenters, supra,* 430 U.S. 290. In *Farmer,* the court allowed union member Hill to maintain an action for damages against his union under state law for the intentional infliction of emotional distress. Hill alleged that his union had engaged in a campaign of personal abuse and harassment against him. One aspect of the alleged campaign was discrimination by the union in hiring hall referrals—an unfair practice arguably prohibited by provisions of the National Labor Relations Act. Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same. As the court explained: "Whether the statement or conduct of the [union] also caused Hill severe emotional distress and physical injury would play no role in the [Labor] Board's disposition of the case, and the Board could not award Hill damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the 'merits' of the underlying labor dispute. . . . [¶] On balance, we cannot conclude that Congress intended to oust state-court jurisdiction over actions for tortious activity such as that alleged in this case. At the same time, we reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme." (*Id.,* 430 U.S. at pp. 304-305 [51 L.Ed.2d at p. 353].) The court was careful, however, to limit the scope of the exception. "Union discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle." (*Id.,* at p. 305 [51 L.Ed.2d at p. 353.].)

Similar reasoning prompted the court in *Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, to find that a union member's action in state court for breach of contract was preempted by federal regulation. In *Lock-*

*ridge,* a union member who failed to pay his monthly dues was suspended from membership in the union and discharged from employment at union request. The union's conduct in securing Lockridge's discharge was arguably prohibited by the National Labor Relations Act. But rather than filing an unfair labor practice charge with the labor board, Lockridge brought suit in state court on a breach of contract theory. He alleged that the union breached a promise implicit in the union constitution that it would not secure his discharge pursuant to the union security clause in the collective bargaining agreement for missing one month's dues. The court, in a later case, explained why Lockridge's action against the union for breach of contract could not be maintained under state law: " '. . . Lockridge's entire case turned upon the construction of the applicable union security clause, a matter as to which . . . federal concern is pervasive and its regulation complex.' [Citation.] Pre-emption was required in the Court's view because the state court was exercising jurisdiction over a controversy which was virtually identical to that which could have been presented to the [Labor] Board. Permitting the state court to exercise jurisdiction pursuant to a law of general application in these circumstances would have entailed a ' "real and immediate" potential for conflict with the federal scheme. . . .' [Citation.]" (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. at p. 195, fn. 24 [56 L.Ed.2d at p. 224].)

The critical inquiry, therefore, is not whether the state is enforcing a law relating specifically to labor relations but whether the state is enforcing a law of general application to federally regulated conduct. It is only in the latter situation "when two separate remedies are brought to bear on the same activity, a conflict is imminent." (*Garner* v. *Teamsters Union* (1953) 346 U.S. 485, 498-499 [98 L.Ed. 228, 244, 74 S.Ct. 161].) In other words, "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." (*Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. at p. 292 [29 L.Ed.2d at p. 486].)

Tested by the principles set forth in *Lockridge* and *Farmer,* the conclusion is inescapable that federally regulated conduct is the basis for appellant's state law claims. All of appellant's remaining causes of action under state tort and contract law turn on the union's responsibility to represent her in the grievance procedure, a matter governed by federal standards as set out in our discussion of the duty of fair representation.[5] State tort and contract

---

[5]This court has been shown nothing to indicate that the complaint is anything other than an action for the breach of the duty of fair representation pled on differing theories. Appellant, in her opening brief, admits that ". . . there is one primary right in the Appellant, upon which suit has been brought. A claim against the UNION and its President lies for arbitrary, capricious and bad faith in failing to protect her rights as an employee under the subject store agreement . . . . Such is a Primary Right, on differing legal theories."

law may not be used as alternative remedies when the facts summoned by an aggrieved union member are insufficient to constitute a cause of action for breach of the duty of fair representation under applicable federal standards. Reexamining the union's duty to its members in light of governing principles of state tort and contract law would create a substantial risk that the instant case would impinge on an area of primary federal concern. (See *Writers' Guild of America West, Inc.* v. *Superior Court* (1975) 53 Cal.App.3d 468 [126 Cal.Rptr. 498].)

In sum, we hold that this action was properly dismissed. Appellant's entire complaint turns upon the union's responsibility to fairly represent her, a matter to which federal law is paramount. To allow appellant to maintain her counts based on state tort and contract law after not stating a cause of action under federal law would risk the danger that the court would apply a standard inconsistent with governing principles of federal law with respect to the union's duty to an individual employee.

The superior court's orders granting demurrer and summary judgment to appellant's complaint are affirmed.

Rouse, Acting P. J., and Smith, J., concurred.