ALMON, Justice.
Three union defendants appeal from the rendition of a $40,000 jury verdict against them jointly and severally in favor of the appellee, James C. Powell. We reverse.
In September, 1975, Alabama Power Company (APC), terminated James C. Powell’s employment as a company lineman, based upon a determination that Powell had a spondylolytie condition in his lower back which rendered him incapable of heavy lifting and therefore unfit for lineman’s duties.
This condition, characterized as a congenital back defect was discovered while Powell was being treated for a severe back sprain sustained in the early spring of 1975. Following this injury Powell returned to work as a lineman in June, 1975. Powell has maintained throughout that he is fit and capable of performing lineman’s duties and he is, in fact, currently employed as a lineman with Alexander City, Alabama.
In March, 1976, Powell sued APC for his wrongful discharge, alleging inter alia, breach of contract, defamation and wrongful interference with future prospective employment. Powell also sought workman’s compensation benefits. The three union defendants, International Brotherhood of Electrical Workers (IBEW); Local 841, IBEW (Local) and System Council U-19 (Council) were added in the APC suit in January, 1977, sixteen months after Powell’s termination. Powell claimed that the Unions breached their duty of fair representation with respect to his termination by failing to invoke the grievance/arbitration procedure.
The unions raised the defense of Alabama’s one year statute of limitations, § 6-2-39(a)(5), Code of .1975, however, the trial court found that the fair representation claim against the union was ex contrac-tu and therefore timely. Powell and APC agreed on a pro tanto settlement prior to *989 trial and only the claims against the unions were presented at the trial. The jury returned with a $40,000 verdict in favor of Powell against all three union defendants.
The unions have appealed this verdict, contending alternatively that:
1) Powell’s claim against them was barred by the one year statute of limitations for tort actions, § 6-2-39(a)(5), Code, 1975;
2) Powell failed to sustain his burden of proof with respect to the alleged breach of the duty of fair representation according to the guidelines set out in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967);
3) Powell’s pro tanto settlement with APC was a complete settlement of all damages arising from the termination of his employment and
4) Powell failed to exhaust his internal union remedies prior to the commencement of this action.
We agree with the trial court’s determination that this action against a union alleging a breach of the union’s duty of fair representation is contractual in nature and the action is therefore controlled by § 6-2-34, 1975 Code (six years) instead of § 6-2-39, 1975 Code (one year).
The United States Supreme Court has imposed a duty of fair representation upon unions as the quid pro quo for the unions’ position as the exclusive bargaining representative of the employees they represent. Laborers & Hod Carriers Local No. 341 v. N.L.R.B., 564 F.2d 834 (9th Cir. 1977). The seminal case enunciating the fair representation doctrine dealt with the Railway Labor Act, Steele v. L. & N. R.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) but under the comparable provisions of the National Labor Relations Act, the unions are granted the exclusive right to represent employees “in respect to rates of pay, wages, hours of employment or other conditions of employment.” National Labor Relations Act, § 9(a), 29 U.S.C., § 159(a) (1970).
In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) the Supreme Court noted that this “statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.” (citation omitted.) 386 U.S. at 177, 87 S.Ct. at 910.
State and federal courts have concurrent jurisdiction over fair representation claims. Vaca v. Sipes, supra. Where, as here, a fair representation case is adjudicated in state courts, the state courts must apply federal substantive law; Wheeler v. International Woodworkers of America, 274 Or. 373, 547 P.2d 106 (1976); Rosales v. General Motors Corp., 78 Cal.App.3d 94, 144 Cal.Rptr. 83 (1978); Handwerk v. United Steelworkers of America, 67 Mich.App. 747, 242 N.W.2d 514 (1976); but the application of the federal substantive law is contingent on how a fair representation claim is characterized for a determination of the appropriate state statute of limitations. In U. A. W. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the United States Supreme Court, addressing a claim under § 301 of the Labor Management Relations Act, 29 U.S.C., § 185 (1970) stated that where it is necessary to characterize an action for determining the appropriate statute of limitations, “there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy.” 383 U.S. at 706, 86 S.Ct. at 1113.
Alabama has not had an occasion to characterize a fair representation case for purposes of deciding the appropriate statute of limitations but we now hold that where a union member presents a claim against his union for a breach of its duty of fair representation in conjunction with a breach of contract claim against his employer, the contract statute of limitations is applicable.[1]
*990 We are cognizant of the requirement that our characterization be consistent with national labor policy and it is our view that the heart of our national labor policy is the formulation and administration of collective bargaining agreements. These collective bargaining agreements are essentially contracts defining the rights and duties of the employer and the union. The rights and duties embodied in a collective bargaining agreement impose obligations on the employer and the union which ultimately benefit the individual employee.
In Tennessee Coal, Iron & R.R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459 (1952), an employee was allowed to recover against his employer who had breached a safety provision contained in collective bargaining agreements. The employee alleged that under the collective bargaining agreement, the company had an obligation to install proper ventilation systems and that it had failed to do so and was therefore liable for breach of contract. This Court affirmed the jury verdict returned in favor of the employee noting that
“ * * * the injured employee, who is a party to the contract or one for whose direct benefit it was made, may sue for its breach in assumpsit, or may sue in tort for negligence in failing to perform a duty imposed by law. He has an election in that respect.
* * * * * *
“The contract, as set forth in the complaint in connection with its allegations, shows that it was made in respect to the ventilating system for the direct benefit of a class of which plaintiff was a member, and therefore he may sue for its breach when suffering damages as a third party beneficiary.” (citations omitted.)
It would be incongruous to allow an employee to sue his employer for the breach of a contract made for his benefit yet disallow his contract action against the union which is vested with the exclusive power to create and enforce that contract.
We recognize that a union’s duty of fair representation is not dependent on the underlying collective bargaining agreement, but rather that duty is of independent origin; Steele, supra, and may be capable of separate vindication, Abrams v. Carrier Corporation, 434 F.2d 1234, 1252 (2d Cir. 1970). We do not find these reasons compelling enough to preclude the application of the contract statute of limitations in this case.
We find the reasoning of the Eighth Circuit Court of Appeals in Butler v. Teamsters Local 823, 514 F.2d 442 (8th Cir.) cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975) very persuasive. That court concluded that the policies underlying federal labor law would be “best effectuated by applying the written contract statute of limitations . . . for the following reasons:
“First, it is clear since Vaca v. Sipes that to recover against his employer, an employee will first have to establish that the union has breached its duty of fair representation. Thus, the traditional argument favoring statutes of limitations— that claims based on stale evidence ought to be barred — is simply not applicable. The ‘stale evidence’ is necessary anyway.
“Second, the damages assessed against the union are inextricably tied to the breach of contract. If a court determines that the employer has not breached the contract, even if the union has breached its independent duty of fair representation, the employee will not be entitled to *991 collect from the union damages flowing from the alleged contract breach.
“Third, only by providing the same limitations period against both employer and union, will the court be able to fashion a remedy which properly allocates the damages between them. In instances where the employer has acted entirely in good faith in its interpretation of the contract, it will be protected if the union has fairly represented the employee, but it will be vulnerable if the union has acted unfairly. Because the good faith employer’s liability is dependent on the union’s conduct, there is an inherent unfairness in a rule which would allow the union to raise a limitations defense while denying such a defense to the employer. The Supreme Court in Vaca recognized the importance of having both defendants before the court:
* * [I]t is obvious that the courts will be compelled to pass upon whether there has been a breach of the duty of fair representation in the context of many § 301 breach-of-contract actions. If a breach of duty by the union and a breach of contract by the employer are proven, the court must fashion an appropriate remedy. Presumably in at least some cases, the union’s breach of duty will have enhanced or contributed to the employee’s injury. What possible sense could there be in a rule which would permit a court that has litigated the fault of employer and union to fashion a remedy only with respect to the employer? * * * >
Id. 386 U.S. at 187, 87 S.Ct. at 915.
“The Court continued:
“ ‘The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union’s refusal to process the grievance should not be charged to the employer. * * * ’
Id. at 197-98, 87 S.Ct. at 921.
The goal of fairly apportioning damages will best be met by a rule which subjects both defendants to an equal period of vulnerability to suit.” (citations and footnotes omitted) 514 F.2d at 447-48.
We perceive that the duty of fair representation is designed to encourage diligent, non-discriminatory union representation. It is our feeling that, absent compelling policy considerations, this goal can best be achieved by applying the longer limitations period.
The appellants’ second contention on this appeal is that the appellee did not satisfy the federal standard set out in Vaca v. Sipes, supra, with respect to a breach of the union’s duty to an individual employee in its processing of grievances under a collective bargaining agreement. As previously noted, state courts are obligated to apply federal substantive law in fair representation cases.
In Vaca v. Sipes, supra, the United States Supreme Court set out these controlling principles:
“A breach of the statutory duty of fair representation occurs only when a union’s conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.” (citations omitted.) 386 U.S. at 190. 87 S.Ct. at 916.
sit * * * * *
“Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.” 386 U.S. at 191, 87 S.Ct. at 917.
* * * * * *
“[I]f a union’s decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union’s incentive to settle such grievances short of arbitration *992 would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union’s freedom to settle claims in good faith would surely be substantial. Since the union’s statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer . . . and union, this severe limitation on the power to settle grievances is neither necessary nor desirable.” 386 U.S. at 192-93, 87 S.Ct. at 918.
The United States Supreme Court has subsequently observed that these principles mean that the burden of showing a breach of the union’s duty of fair representation “involves more than demonstrating mere errors in judgment.” Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231, 245 (1976).
Applying these standards to the facts in this case as they are reflected in the record, this Court may determine the sufficiency of the evidence as a matter of law. Vaca v. Sipes, supra.
Powell’s evidence indicated that: the Company doctor released him and told him that he could return to work as a lineman; he was subsequently discharged by APC and he told his job steward that he wanted to file a grievance; pursuant to the job steward’s instructions, he called Jerry Hood, business manager of the Systems Council, and told Hood that he wanted to file a grievance; Hood told him that there was nothing that the Union could do about his termination.
Powell’s evidence also indicated that: he drew unemployment compensation and made about $1,000 at odd jobs; he was ultimately hired by the Alexander City Light Department as a lineman and he is currently employed in that capacity; APC never made any firm offers of employment to him after his discharge and he was in good health, ready, willing and able to perform lineman’s duties as of the date of his discharge.
Powell and other witnesses called on his behalf revealed that he had previously had an argument with Jerry Hood about coffee breaks and that the appellee had told Hood “that if they wasn’t going to represent the construction department, that the best thing we could do was to get out [of the union] and get some more representation.” There was also testimony on cross-examination of Jerry Hood which indicated that after Jerry Hood was informed of Powell’s pending termination, Hood did not make any efforts to secure independent medical advice. Hood also testified that if he had any notes or memoranda relating to this matter, he would have destroyed them and that he was currently employed as a supervisor with APC.
On the other hand, the union’s evidence indicated that: the collective bargaining agreement provided that APC was the sole judge of competency; the collective bargaining agreement provided that the Company surgeon has the exclusive right to determine physical competency and that the union had been unsuccessful in modifying the effect of this competency clause in previous arbitration efforts.
The unions presented evidence which showed that: Jerry Hood was the business manager of the Systems Council which coordinated the activities of nine local brotherhoods of the IBEW in Alabama; Jerry Hood attended a meeting where company officials informed him that since Powell had a permanent “no heavy lifting” restriction, he could not continue work as a lineman; the company had attempted to find another job within the company that Powell “could perform without prejudice to his physical condition”; and that there was no other job available at that time.
After Hood was informed of these matters there was testimony to the effect that: Hood got upset and criticized the company for “not finding a place for Powell within a company the size of Alabama Power Company”; Hood told the company that Powell had clerical experience which was not reflected in his employment records and the company renewed the search for a position *993 for the appellee subsequent to Powell’s termination. There was evidence which indicated that: after the company learned of Powell’s clerical experience, they arranged interviews with him for a clerical position; Powell expressed no interest in a clerical job that kept him inside and he expressed dissatisfaction with the salary of a clerk.
Extensive medical testimony was presented with regard to Powell’s back condition, spondylolysis. The thrust of this testimony was that his back disability was asymptomatic; spondylolysis was characterized as a degenerative arthritis of the spine where a portion of the bony substance of a vertebra is missing; spondylolysis never undergoes a healing process; a person with spondylolysis has a greater likelihood of experiencing back problems and there was no reliable and accurate way to predict whether a person with spondylolysis would have future back problems.
We have carefully reviewed the entire record and we have examined many federal and state cases considering alleged union misconduct in the context of a breach of the duty of fair representation. The law requires that union conduct be perfunctory, arbitrary, discriminatory or in bad faith before it is determined that the union has breached the duty of fair representation. We conclude that the union’s actions in this case were a legitimate exercise of discretion on behalf of an employee. Factors that we consider significant in this decision are: the potentially debilitating nature of the appel-lee’s back condition; the plenary authority of the company to determine physical competency within the meaning of the collective bargaining agreement; the inability of the union to challenge this competency clause in either arbitration proceedings or collective bargaining agreement negotiations and the union’s activity in securing alternate employment opportunities.
A Fifth Circuit Court of Appeals case is instructive. In Turner v. Air Transport Dispatcher’s Association, 468 F.2d 297 (5th Cir. 1972) the court observed that
“ * * * this duty of representation does not confer an absolute right on an employee to have his complaint carried through all stages of the grievance procedure. As Vaca makes clear, unions should have considerable discretion to control the grievance and arbitration procedure, subject only to a duty of fair representation, and an employee is subject to the union’s nonarbitrary discretionary power to settle or even abandon a grievance, even if it can be later demonstrated that the employee’s claim was meritorious. Turner argues that ATDA treated his grievance in a perfunctory fashion. It is beyond doubt that the duty of fair representation includes an obligation to investigate and to ascertain the merit of employee grievances. But in the case sub judice, the union officials and members listened to Turner’s arguments at an open meeting and after discussion informed him of the Union’s position. Further union investigation was unnecessary since the only difference between Turner, on one side, and Braniff and the ATDA, on the other, concerned the interpretation of the collective bargaining agreement, and not a dispute over facts.
The mere fact that the ATDA refused to file Turner’s grievance through the Association’s grievance representative does not amount to perfunctory or arbitrary treatment. A union’s broad discretion in prosecuting grievance complaints includes not only the right to settle the dispute short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit.” (citations and footnotes omitted) 468 F.2d at 299-300.
We believe that the union’s representative, Mr. Hood, pursued a “common sense and practical approach toward resolution” of this problem. See Bures v. Houston Symphony Society, 503 F.2d 842, 843 (5th Cir. 1974). It was his judgment that filing a grievance to reinstate Powell and pursuing the grievance through arbitration would be fruitless. He chose instead to attempt to procure another position within the compa *994 ny for the appellee and the record indicates that to a certain extent, he was successful.[2]
The evidence in the record does not support a finding that Hood’s decision was either perfunctory or arbitrary, in light of these facts: (1) the company had the power to terminate Powell for “sufficient and reasonable cause”; (2) the company reserved the exclusive right to determine competency, physical or otherwise and (3) “it is questionable that the union could expect to prosecute successfully a grievance attacking the . . . agreement entered into with the [company] which agreement the Local had procured and negotiated.” Watson v. Int'l. Brotherhood of Teamsters, 399 F.2d 875, 880 (5th Cir. 1968). Powell did not establish that the union breached its duty to him.
In view of our decision, it is not necessary to discuss the remaining issues.[3] This case is reversed and remanded to the trial court so that judgment may be entered for the defendants.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER and BEATTY, JJ., concur.
JONES, SHORES and EMBRY, JJ., concur in part and dissent in part.

. Compare Butler v. Local Union 823, International Brotherhood of Teamsters, Etc., 514 F.2d 442 (8th Cir.) cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975) with Sander- *990 son v. Ford Motor Co., 483 F.2d 102 (5th Cir. 1973). See Canada v. United Parcel Service, Inc., 446 F.Supp. 1048 (N.D.Ill.1978); Note, Statute of Limitations Governing Fair Representation Action Against Union When Brought With Section 301 Action Against Employer, 44 Geo. Wash.L.Rev. 418 (1976).
It is interesting to compare the views of the dissenters in this case with those expressed in Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975) and Berry v. Druid City Hospital Board, 333 So.2d 796 (Ala. 1976).

. Mr. Edsel Webster, a superintendent, testified that he interviewed the appellee for a position in his office as a Junior Payroll Clerk. He testified that the appellee didn’t feel “like he was able to sit at a desk and work all day with his back problem” and he “stated his reasons why he didn’t think he could take the job because of the reduced rate of pay.”
Mr. Thomas Wood testified that he talked with the appellee about a position in his department as a Senior General Clerk. On direct examination Mr. Wood testified:
Q. And, the job of senior general clerk, was it . were you prepared to offer him
the job?
A. Yes, sir.
Q. Was the job his for the asking?
A. Yes sir, it was.
On cross-examination, Mr. Wood testified that Q. You did make him a firm offer of the job?
A. Depends on your interpretation of the comments that were made, sir. I told him what the job entailed, and he indicated a lack of interest in the job. I told him that if he wanted to think it over, that I would hold the job open for him and if he wanted to talk some more about it, to give me a call and we would certainly get together and pursue it further. I did [not?] hear from him.

. The by-laws of both Systems Council U-19 and IBEW set out intra-union appeal procedures and unless the adequacy of an internal remedy is questioned and its inadequacy established, these internal union remedies must generally be exhausted before a claimant can turn to the courts for relief.