This is an appeal from a summary judgment which dismissed both the plaintiff's claim against his former employer for pension benefits and his claim against his union for breach of its duty of fair representation.
In 1937 Herman H. Cohorst became an employee of United States Steel Corporation (the Company) and a member of the United Steelworkers of America (the Union). The Company discharged Cohorst for absenteeism in 1957, but a successful arbitration award ordered Cohorst's reinstatement as a tandem mill roller and his recovery of backpay. As a result of sickness, Cohorst stopped working for the Company on March 18, 1960, but the Company continued to carry Cohorst on the employment rolls for two additional years until termination on March 18, 1962.
Cohorst's status on the termination date was in dispute. He contended that he was permanently laid off on March 18, 1962, after reporting to work with a doctor's return-to-work slip. The Company, however, contended that Cohorst was discharged on March 18, 1962, for "absence without proper cause" based upon his unexplained absence for over two years on disability.[1]
On January 30, 1964, the Union reopened Cohorst's 1957 grievance, seeking his return to work and additional backpay. On this date, Cohorst, the Company, and the Union executed a written release which granted Cohorst $1,000.00 in settlement of his grievance "for all purposes" and which relieved the Company and the Union "of any further liability" to Cohorst.[2]
In the years following the 1964 release, Cohorst contacted several Company and Union officials concerning his eligibility for the Company's deferred vested retirement pension.[3] Upon the Company's refusal to grant the requested pension benefits, Cohorst sued United States Steel Corporation on May 13, 1980. Cohorst then added the United Steelworkers of America as a party *Page 25 
defendant on September 4, 1981, claiming that the Union breached its duty of fair representation by failing to invoke the grievance/arbitration procedure mandated by the pension plan.
The trial court entered summary judgment in favor of both the Company and the Union on the following grounds: i) Cohorst's execution of a valid release in favor of the Company and the Union; ii) Cohorst's noncompliance with the statute of limitations applicable to the Union; and iii) Cohorst's noncompliance with the appeals procedure of the pension plan. Upon denial of his motion to vacate this judgment, Cohorst appeals.
We agree with the trial court's determination that as a matter of law the 1964 settlement agreement was unambiguous and included within its terms a release of all pension claims which Cohorst might assert against the Company.
Although Cohorst contends that this determination involved the resolution of disputed factual issues outside the province of summary judgment procedure, we have consistently held that the court, not the jury, must first ascertain whether a contract is ambiguous and then must determine the meaning of the contract when its terms are clear and certain. C.F.Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, 649,320 So.2d 657, 661 (1975) (on denial of application for rehearing) (citing Air Conditioning Engineers, Inc. v. Small, 259 Ala. 171,176, 65 So.2d 698, 703 (1953)).
The terms of the agreement provided that payment of $1,000.00 to Cohorst constituted settlement of the 1964 grievance "for all purposes" and that such payment relieved the Company "of any further liability" to Cohorst. Because the trial court found as a matter of law that this language was unambiguous, no factual disputes remained to be resolved. The court could only look to the wording of the release to determine its meaning:
 "In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and parol evidence is not admissible to impeach it or vary its terms."
Conley v. Harry J. Whelchel Co., 410 So.2d 14, 15 (Ala. 1982) (citing Miles v. Barrett, 223 Ala. 293, 293, 134 So. 661,661-62 (1931)).
The trial court properly concluded that the terms of the 1964 settlement agreement unambiguously evidenced the parties' intent to include pension claims within the release of liability.
We also agree with the trial court's determination that as a matter of law the Union did not breach its duty of fair representation to Cohorst.
The United States Supreme Court, in Vaca v. Sipes,386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), held that the National Labor Relations Act, which grants unions the exclusive right to represent all members of a collective bargaining unit, also imposes upon unions an implied duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 386 U.S. at 177,87 S.Ct. at 910 (citations omitted). Our Court, inInternational Brotherhood of Electrical Workers v. Powell,370 So.2d 987 (Ala. 1979), recognized that this federally created cause of action "requires that union conduct be perfunctory, arbitrary, discriminatory or in bad faith before it is determined that the union has breached the duty of fair representation." Id. at 993.
As Vaca makes clear, the mere fact that the Union refused to file Cohorst's grievance concerning pension benefits does not amount to perfunctory or arbitrary treatment. 386 U.S. at 191,87 S.Ct. at 917. A breach of the duty of fair representation, moreover, is not established merely by proof that the underlying grievance was meritorious. 386 U.S. at 192-93,87 S.Ct. at 917-18. Thus, any attempts by Cohorst to prove either the ineffectiveness of the release *Page 26 
or his eligibility for pension benefits would not imply a breach of the Union's duty of fair representation absent a showing of arbitrary or capricious conduct on the part of the Union.
After a careful review of the entire record, we conclude that the Union's actions in this case were a legitimate exercise of discretion on behalf of Cohorst. Factors that we consider significant in this decision are: the Union's good faith belief that the settlement agreement released the Company from any liability for Cohorst's pension claims; the Union's good faith belief that the uncertain status of Cohorst at the termination of his employment rendered his deferred pension eligibility nonmeritorious; and the Union's meetings with Cohorst and subsequent investigations of his eligibility for pension benefits.
In view of our decision it is unnecessary to discuss the remaining issues of exhaustion of pension agreement remedies and the statute of limitations except to observe that, inU.A.W. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107,16 L.Ed.2d 192 (1966), the United States Supreme Court, addressing a claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970), invited state courts to determine the appropriate statute of limitations.
We accepted that invitation in International Brotherhood ofElectrical Workers v. Powell, 370 So.2d 987 (Ala. 1979), and following the Eighth Circuit Court of Appeals in Butler v.Teamsters Local 823, 514 F.2d 442, cert. denied, 423 U.S. 924,96 S.Ct. 265, 46 L.Ed.2d 249 (1975), adopted the contract statute of limitations in such cases because the two claims are inextricably interdependent.
The United States Supreme Court has now reversed its former decisions in DelCostello v. International Brotherhood ofTeamsters, ___ U.S. ___, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), holding that it would borrow a federal six-month statute found in § 10 (b) of the National Labor Relations Act, 29 U.S.C. § 160
(b). The six-month statute now governs fair representation claims when joined with a claim against the employer for breach of the collective bargaining agreement.
DelCostello, supra, thus overrules that portion of thePowell, supra, decision dealing with the statute of limitations.
The trial court decision granting summary judgment on behalf of United States Steel Corporation and the United Steelworkers of America is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] According to company employment records, the alleged discharge was not effective until March 13, 1963.
[2] The release provides in pertinent part:
 "The Union's representative and Management's representative agreed that this case should be settled by the payment by the Company to Grievant Herman H. Cohorst the further sum of $1,000.00 less normal deductions. Grievant understood and agreed that payment to him of the above amount constituted settlement of this grievance for all purposes including compliance with Board of Arbitration Case T-572, and that such payment relieves the Company and the Union of any further liability to grievant."
[3] Under the plan, an employee who is either laid off or terminated as a result of a permanent factory shutdown for a period of two years following 15 years of consecutive service may receive the deferred vested pension beginning at age 40. According to the trial court, Cohorst would have received the vested pension on March 18, 1964, if at that time he was in a layoff status and his union had pursued the grievance procedure outlined in the pension plan.