[Civ. No. 13886. Third Dist. Sept. 28, 1984.]

COUNTY OF INYO, Petitioner, v.
CITY OF LOS ANGELES et al., Respondents.

COUNSEL

McCutchen, Doyle, Brown & Enersen, Antonio Rossmann,. Christine E. Sherry, Dennis L. Myers, County Counsel, and Gregory L. James for Petitioner.

Ira Reiner, City Attorney, Edward C. Farrell, Chief Assistant City Attorney, Edward A. Schlotman and Kenneth W. Downey, Assistant City Attorneys, for Respondents.

McDonough, Holland & Allen, Stuart L. Somach and Laurens H. Silver as Amici Curiae.

OPINION

**BLEASE, J.**—More than 11 years ago the judgment of this court became final directing the issuance of a peremptory writ commanding the City of Los Angeles: "to prepare, certify and file in accordance with law an [environmental impact report addressing expanded groundwater extraction from Owens Valley], and further directing [the] City, pending such preparation, certification and filing to limit forthwith its underground-water extraction in the affected area to [an interim pumping level]." (*County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 816 [108 Cal.Rptr. 377].) Much water has run under the bridge—or more precisely into the city's aqueduct (as permitted by our interim pumping orders)—since that time. Four subsequent published opinions of this court chronicle the interminability of the litigation, despite final judgment. (See *County of Inyo* v. *City of Los Angeles* (1976) 61 Cal.App.3d 91 [132 Cal.Rptr. 167]; *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185 [139 Cal.Rptr. 396]; *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82 [144 Cal.Rptr. 71]; *County of Inyo* v. *County of Los Angeles* (1981) 124 Cal.App.3d 1 [177 Cal.Rptr. 479].)

Now Los Angeles and its erstwhile adversary, the County of Inyo, come before us with a joint proposal for yet another modification of the "interim" provisions of the writ. As we will show, portions of the proposal are unworkable. However, in response to the proposal we will issue a further order in aid of complete enforcement of the writ. (See Code Civ. Proc., § 1097.) The order will allow the litigants to pursue the meat of their proposal shorn of dubious by-products. In the alternative, if the parties cannot

agree, Los Angeles must abide by a prescribed timetable for compliance with our outstanding writ.

## The Proposal

The parties' proposal is in the format of a proposed stipulation and order. Its avowed purpose is to settle by future agreement the disputes that underlie this litigation. The terms are detailed but a brief synopsis will here suffice. The parties would use data from ongoing studies of groundwater and vegetation in the Owens Valley to fashion their future agreement. When the studies are completed the parties will attempt to develop a joint long-term groundwater management plan for Owens Valley and, in tandem, an Environmental Impact Report (EIR) (Pub. Resources Code, § 21061) necessary to warrant implementation of the plan. If they succeed, the plan would govern the city's use of Owens Valley groundwater and the parties would conform their practices to it.

In the interim, while the studies are conducted and the planning process is taking place, the amount of groundwater that Los Angeles could extract would be determined annually by agreement of the parties (made by a joint committee). If the parties are unable to agree the stipulation provides a table of maximum amounts of water that may be extracted annually, varying according to runoff. (§ 12.) Various provisions of the stipulation address water use practices inside the valley during its term; in general they set forth a status quo to be maintained. (§§ 13, 14.)

The stipulation is to take effect upon court approval and, if all goes well, terminate on February 28, 1989. It may be extended beyond that date by agreement if reasonably necessary to complete preparation of the comprehensive plan. (§ 6.) If all does not go well, the county, once each year, may give one year's notice of termination if no agreement on interim pumping is reached. (§ 12.1.) If disputes cannot be resolved by the parties they are to be submitted to a designated superior court judge. His decisions would be arbitral, i.e. essentially final and unappealable. (§ 16.5 *ff.*) The one exception is that the claim that a party, by its actions, has repudiated the stipulation is to be tried in this court. If proved it would result in termination of the agreement. (§ 16.4.)

The stipulation further provides that Los Angeles will lease to Inyo County several town water systems in the county that are apparently owned by the city. Water rates to customers of these systems will be halved. (§ 14.5 *ff.*) Los Angeles will pay Inyo County $860,000 in installments to assist in financing the latter's costs of the groundwater studies. (§ 5.3.)

As originally tendered, the proposal said that performance during its term would constitute compliance with our writ's command to prepare an EIR. During that term the interim pumping orders of this court would "be withdrawn and this stipulation and order shall be substituted therefore." The adoption by the parties of the proposed joint long-term groundwater management plan would constitute full compliance with the writ and the California Environmental Quality Act "duties required by said writ." Notification to this court of adoption of such a plan would discharge the writ. (§ 3.)

This court, by letter, raised various concerns about the proposed stipulation with the parties. They filed written responses and attended, at our invitation, a hearing to consider the proposal on June 13, 1984. At the hearing the proposal was modified by agreement of counsel to provide that the contemplated EIR for the long-term groundwater management plan would use as the "no project" baseline the preproject conditions delineated in our published opinions in the 1977 and 1981 decisions in the case. After the hearing, we inquired by letter if the parties would be amenable to altering the proposal to provide: "The outstanding judgments and orders of this court, as detailed in the court's opinions, shall be complied with, except that the interim pumping provisions of the stipulation shall substitute for the existing interim pumping order of this court, and the time provisions of the stipulation shall substitute for the express and implied time requirements of the outstanding writ."

In reply counsel for the parties submitted a "draft" modification of their proposal, not yet approved by the parties, purporting to include "the conditions specified by the Court." The draft provides that during the term of the stipulation its provisions are substituted for the prior orders of the court. (§ 1.1.) It says: "Because the City's project of increased groundwater extraction will be superseded by the joint groundwater management plan, no EIR will be written on such a Los Angeles project if the joint plan and EIR described herein are adopted." (§ 2.1.) It then sets forth the description for the "no project" alternative that would be used in the EIR on the joint plan, as well as project description that would be used for the joint plan EIR. (§§ 2.1.1, 2.1.2.) Adoption of the joint plan and the associated EIR would result in discharge of the writ upon approval of that EIR by this court. (§ 3.3.) If the joint plan is not attained, the outstanding orders are reinstated. In this event, the project definition that would be used for the EIR commanded by the writ is set forth. (§§ 3.4, 3.3.1.)

The draft modification then provides: "The County agrees and the Court finds that the no project and project definitions and descriptions contained in [prior] paragraphs are in full compliance with this Court's outstanding

judgments, orders and writ, and shall be withdrawn from further consideration by the Court. The County agrees it will make no challenge to such definitions and descriptions in any future proceeding involving a return to the writ by the City and its Department. However, County does not waive any right to challenge the adequacy and legal sufficiency of the EIR in any other respect." (§ 3.3.2.)

## *Discussion*

■ The court cannot accept the stipulation tendered. It misunderstands that our authority to vacate the judgment is precluded by its finality, and that our authority to endorse, a priori, significant parts of the future CEQA process is limited by CEQA. It is res judicata that Los Angeles' extraction and export (however denominated) of groundwater over historic levels is a project for which an EIR is compelled. This is the core of the final judgment fashioned long ago. What has followed that judgment are compliance proceedings and interim orders pending compliance. Our opinions manifest that we have a reservoir of jurisdiction over steps to carry that judgment into effect including the making of interim orders. (Also see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 77 *ff.*) However, it is far too late for us to countenance a proposal that eclipses the prior final adjudication of substantial issues.

The stipulation, which the parties would have us endorse as an order of this court, would conditionally "set aside" all of the orders of the court, including the "peremptory writ of mandate [which] directed the CITY and its DEPARTMENT to prepare an Environmental Impact Report (EIR) covering their increased extractions of subsurface water from the [Owens] Valley."

What the parties seek is that we conditionally *vacate* the judgment. If the stipulation is adhered to, the vacation is made permanent. As appears, that cannot be done by consent of the parties and the statutory remedies to that end have long since ceased to be available. ■ In general, "[r]elief from a judgment must be obtained by means of a motion for that purpose in the court that rendered the judgment . . . ." (Rest.2d Judgments, § 78.) ■ In California, a court may set aside a judgment only on motion for statutory grounds or to correct its records. (See *Olivera v. Grace* (1942) 19 Cal.2d 570, 573-574 [122 P.2d 564, 140 A.L.R. 1328]; jurisdictional grounds are now set forth in Code Civ. Proc., § 473.) The statutory grounds are found in Code of Civil Procedure sections 473 and 663. The requirements of section 473 obviously cannot be met. Nor can those of section 663. ■ Section 663a imposes strict time limits which have long since expired. "Even . . . a consent that [the] motion be granted . . . could not give the court power to act after the time had elapsed within which proceedings by

motion could be instituted." (*Tinn* v. *U.S. District Attorney* (1906) 148 Cal. 773, 777 [84 P. 152].) Moreover, section 663 permits the motion only where the judgment is inconsistent with a special verdict or for "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ." These standards cannot be met in this case.

 Our only authority has to do with enforcement of the outstanding judgment. We can order that which is consistent with the judgment. That obviously does not include any action which effectively sets it aside. As this court observed in our decision of August 17, 1976, (*County of Inyo* v. *City of Los Angeles, supra,* 61 Cal.App.3d at p. 95): "The writ directing an EIR will not be satisfied until there has been a final judicial determination of the EIR's validity. That determination will be made initially by this court whether it involves questions of law or fact or both." (Fn. omitted.)

It is only within the realm of procedural modifications to enforce the outstanding writ that we can entertain initiatives from the litigants. Within this domain we are willing to substitute for our interim pumping orders most of the provisions of the proposal which address the establishment of annual pumping levels. Implicit in this willingness is our determination that the command of the outstanding writ for an EIR can be served even though it is presented in conjunction with a joint groundwater management plan. However, this determination does not imply that the joint plan is a new project. The project remains as it was, a "program for increasing the average rate of groundwater extraction and use (both for export and in-valley use) above a baseline rate reasonably representing the average rate of groundwater extraction and use (both for export and in-valley use) preceding the second aqueduct's availability for use." (*County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d at p. 196, fn. omitted; *County of Inyo* v. *City of Los Angeles, supra,* 124 Cal.App.3d at p. 6.) The precise content of this project is amplified by the EIR which fleshes out the details, environmental consequences and policy choices which appear from a detailed study of the project. It was the failure of previously submitted EIRs to provide an accurate, finite and stable description of the details of the project which caused their rejection. In the last of these EIRs the project description was amplified by a detail of the in-valley purposes of the project. It was in connection with these purposes that we said that an "EIR may not define a purpose for a project and then remove from consideration those matters necessary to the assessment whether the purpose can be achieved." (*County of Inyo* v. *City of Los Angeles, supra,* 124 Cal.App.3d at p. 9.) We are mindful that a groundwater management plan may mitigate some of the environmental consequences of the groundwater extraction project. This too would be the subject of the EIR. But the groundwater management plan

does not define a new project which is removed from the sway of the writ and from the detailed requirements of our prior decisions.

In addition, the reply of the parties to our most recent suggestion displays a fundamental misconception about the California Environmental Quality Act (CEQA) process; it proposes what might be aptly described as a CEQA turkey shoot. We are asked to approve proposed "no project" and "project" descriptions, prior to the city's embarcation on the CEQA process, which are then "withdrawn from further consideration by the Court." ■ As our prior decisions have been at pains to emphasize, CEQA compels an interactive process of assessment of environmental impacts and responsive project modification which must be genuine. It must be open to the public, premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently described project, with flexibility to respond to unforeseen insights that emerge from the process. ■ Accordingly, gauging the completeness and legal adequacy of the EIR and its detailed project description is only possible after the CEQA process has been completed.

We have given exhaustive guidance in our prior opinions on the preproject conditions which, as a matter of law, must serve as the "no project" alternative for the city's project of increased groundwater utilization. This baseline must obtain regardless how the EIR addresses the city's project, alone, or in a joint plan. Precise factual particularization of the baseline conditions must be open to analysis and proof during the CEQA process. The degree to which preproject conditions must be detailed will depend in part upon the content of a consistent and final project description. Moreover, all of the participants in the CEQA process must have the opportunity to test the "no project" and "project" descriptions. These definitions must run the gauntlet of CEQA process scrutiny to acquire legitimacy. Any other approach would compromise the integrity of the EIR process and our review of the compliance of the EIR with the decisions of this court. The adequacy of the description of preproject conditions cannot be litigated before the fact.

The project as amplified by the project uses and mitigating measures, whether set forth in a joint management of groundwater plan or a proposal produced by the city alone, must be open for public discussion and agency modification during the CEQA process. It is difficult to conceive litigants as sophisticated as the parties in this action could suppose this court could legitimate the core of an EIR before the CEQA process has begun. This insensitivity is unseemly in an area where public confidence in the openness of the process is important.

The proffered stipulation is also questionable in proposing to include within the court's order all of the provisions of the contract of the parties and

then to delegate enforcement of the order. Collateral matters as well as those germane to procedural modifications of our prior orders would be engrossed as the order of this court. Enforcement of this miscellany would then be parcelled out to the arbitrator. That which belongs in an order of this court has no place being farmed out for enforcement to an arbitrator. Our contempt power is not delegable. In sum, the proposal, especially in view of the most recent draft modifications is unworkable, ill-advised, and in parts would be violative of CEQA. Accordingly, we cannot approve it.

Nonetheless, as related, we are willing to permit the parties a measure of flexibility sufficient to allow them to pursue their armistice and a joint groundwater management plan. What considerations they may choose to act upon are left to them. If they contract for collateral exchanges of consideration, that is a matter between the parties. They may enforce such collateral promises, if necessary, by the ordinary mechanism of contract law. Within this context we issue the following order.

### Disposition

The court takes note of the agreement between the parties, dated April 18, 1984, together with the proposed modification of the agreement received by July 20, 1984, and lodges the documents with the court. Upon submittal to the court of the parties' agreement to implement an annual pumping program, as provided in sections 11.0, 12.0 (with the exception of subsection 12.2.4 and the last sentence of subsection 12.4), paragraph 16.2 and paragraph 16.3 of the proposed agreement, the interim pumping orders of the court will be modified so as to incorporate those provisions. This modification will cease to be in effect and the order shall revert to the pumping levels set in the preexisting interim orders upon filing with the court of a notice by the county that the city has failed to materially comply with the modification provisions. Contingent upon the above agreement to a pumping program, the court will extend the time within which to comply with the judgment of this court as provided in section 6.0 of the proposed modification of the stipulation.

If no submittal of an agreement to commence the joint program is made by December 1, 1984, the City of Los Angeles shall forthwith commence the CEQA process to comply with the outstanding writ. If the agreement is terminated pursuant to section 12.1, the city shall commence the CEQA process on the date the termination is effective. The city shall present a legally adequate EIR to this court within one year of the date the CEQA process must be commenced. If the city fails to present an EIR to this court within this time period, the interim pumping order is modified to provide that the rate of pumping permitted shall be at the level of 89 cubic feet per

second per 12-month cycle commencing each July 1st, the rate prevailing on November 23, 1970, the effective date of CEQA.

In all other respects the orders and opinions of this court stand as issued. Except as provided above, the court does not endorse any of the provisions of the proposed stipulation.

Puglia, P. J., and Evans, J., concurred.