[L.A. No. 32144. Dec. 1, 1986.]

CONCERNED CITIZENS OF COSTA MESA, INC., et al.,
Plaintiffs and Appellants, v.
32ND DISTRICT AGRICULTURAL ASSOCIATION et al.,
Defendants and Respondents.

COUNSEL

Richard L. Spix for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Dennis W. Dawson, Deputy Attorney General, Neil Papiano, Deborah M. Nesset and Iverson, Yoakum, Papiano & Hatch for Defendants and Respondents.

OPINION

REYNOSO, J.—What may a citizens' group do when a stadium is constructed in their neighborhood substantially different than planned? The citizens charge that the changes were made without notice and that they did not know of the changes, and could not through the exercise of reasonable diligence have discovered them, until the first and overly noisy concert took place. On those facts, does the California Environmental Quality Act protect the citizens? We hold that it does.

The California Environmental Quality Act (Pub. Resources Code, § 21000 et seq., hereafter CEQA)[1] provides that a state or local agency must file an environmental impact report (EIR) on any project it intends to carry out or approve that may have a significant effect on the environment. (§§ 21100, 21151.) If substantial changes are proposed in a project that require major revisions of the initial EIR, the agency must prepare a subsequent or supplemental EIR. (§ 21166, subd. (a).) An action may be filed against an agency that proceeds with a project without filing an EIR when one is required by CEQA. Under section 21167, subdivision (a), such an action must be filed within 180 days after commencement of the project.

The precise issue in this case is whether the 180-day limitation period bars a suit if an EIR relating to the project has been filed, but two important

---

[1] All statutory references are to the Public Resources Code unless otherwise noted.

steps are not taken: (1) there is no notice to the public that the project is substantially changed and (2) no later EIR is filed to reflect the changes. We conclude that an action challenging noncompliance with CEQA may be filed within 180 days of the time the plaintiff knows or should have known that the project under way differs substantially from the one described in the initial EIR. The facts we discuss below, if proved, would support a determination that the plaintiffs did not know and reasonably could not have known of the substantial difference until the first concert took place.

## I.

In 1977, the 32nd District Agricultural Association (district), which constructs, maintains, and operates facilities at the Orange County Fairgrounds, proposed to improve and upgrade the fairgrounds, including the Pacific Amphitheater within the grounds. The district prepared an EIR in connection with the project after a public hearing. Construction of the theater commenced in February 1983, and the first concert at the newly completed theater was held on July 27 of that year.

On January 20, 1984, plaintiffs, a nonprofit corporation whose membership is comprised of some of the approximately 24,000 residents who live near the fairgrounds, and two individuals who also reside nearby, filed suit against the district and Ned West, Inc. (West), the builder and operator of the theater under a contract with the district. Their first cause of action, which is the focus of our inquiry here, alleged that the district violated CEQA by making substantial changes in the theater after the EIR was filed without notification to the public or the filing of a subsequent EIR.

According to the complaint, the EIR described the theater as containing 5,000 fixed seats with additional seating on the grass. It was to be located on six acres of land, and its stage would be directed away from the sensitive residential areas to the north of the fairgrounds. Performing Arts Associates, a group formed specifically for the venture, would manage the theater and market its entertainment to the "affluent people available and willing to attend quality shows such as those presented at the Greek Theatre." The EIR stated that: (1) there was no problem with on-site parking, (2) noise was a major concern of area residents, and (3) mitigation studies would be undertaken early in the planning process to address the concerns of nearby residents. In 1978, the district determined to carry out the theater project, after finding that the EIR was complete and adequately addressed environmental issues.

The complaint alleges that the district then entered into a contract with West in March 1980 that authorized West to make substantial changes in

the project described by the EIR. Instead of 5,000 fixed seats, 7,000 were authorized, in addition to 8,000 seats on the lawn. The site was increased from six to ten acres, and the stage was moved to face the single-family residences north of the fairgrounds. West or its affiliate would manage the theater, rather than Performing Arts Associates. Noise mitigation measures contemplated by the EIR were not taken and the noise level exceeded that allowed by county law. Plaintiffs had no notice of the changes and were not afforded a hearing to comment on them.

The complaint asserts that the district had a duty to prepare a subsequent or supplemental EIR, as required by section 21166, subdivision (a), because substantial changes in the project were made after the EIR was filed, which would have effects on the environment not considered in the original report. Plaintiffs claim they did not know and could not have known through the exercise of reasonable diligence that a cause of action accrued to them until within 180 days of the date they filed their complaint because they had neither actual nor constructive notice of the changes made in the project by the contract between the district and West, and the changes were not made known at a public hearing.

Plaintiffs sought both declaratory and injunctive relief.[2] Defendants demurred to the complaint, claiming that the cause of action was barred by the limitation period in subdivision (a) of section 21167 because it was not filed within 180 days after construction of the theater commenced, which is the latest date for filing a challenge for failure to comply with CEQA under that provision.[3] Plaintiffs stated that they were unable to amend and stipulated that the court should sustain the demurrers without leave to amend and dismiss the complaint. The court did so, and this appeal followed. The Court of Appeal affirmed the trial court's ruling on this issue.

## II.

We begin with a summary of some of the relevant statutory provisions. CEQA describes an EIR as "an informational document which . . . shall be considered by every public agency prior to its approval or disapproval of a project." (§ 21061.) The purpose of an EIR is to provide the public

---

[2]They sought to enjoin defendants from using the theater "for a purpose or in a way that does not substantially comply with the EIR" and from "[f]ailing to prepare . . . a subsequent or supplemental EIR for the [theater] which satisfies the requirements of CEQA."

[3]Section 21167 provides several other limitation periods that may be applied in a CEQA case, some of them of shorter duration than 180 days from commencement of a project. (E.g., subd. (b).) We confine our discussion to the 180-day period after commencement of a project as set forth in subdivision (a) because plaintiffs allege that the district made substantial changes in the theater project without a formal decision by the district.

and public agencies "with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project." (*Ibid.*)

We have indicated that CEQA's fundamental objective is "to ensure 'that environmental considerations play a significant role in governmental decision-making.'" (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 797 [187 Cal.Rptr. 398, 654 P.2d 168].) To facilitate CEQA's informational role, the EIR must contain facts and analysis, not just the agency's bare conclusions or opinions. This requirement enables the decision-makers and the public to make an "independent, reasoned judgment" about a proposed project. (*Santiago County Water Dist.* v. *County of Orange* (1981) 118 Cal.App.3d 818, 831 [173 Cal.Rptr. 602]; *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841 [115 Cal.Rptr. 67] (requirement of detail in EIR "'helps insure the integrity of the process of decision by precluding stubborn problems or serious criticism from being swept under the rug.'"); see also Cal. Admin. Code, tit. 14, § 15151.)

"Public participation is an essential part of the CEQA process" (Cal. Admin. Code, tit. 14, § 15201), and several CEQA provisions recognize its importance. For example, an agency must provide public notice that it is preparing an EIR or a negative declaration (§ 21064) before approving a project, although individuals need not be given notice unless they have previously requested it. (§ 21092.)[4] In addition, the state CEQA Guidelines provide for a period of public review for a draft EIR or for a negative declaration. (Cal. Admin. Code, tit. 14, §§ 15073, 15087.)[5] Under section

---

[4]Section 21092 provides: "Any public agency which is preparing an environmental impact report or a negative declaration shall provide public notice of such fact within a reasonable period of time prior to final adoption by the public agency of such environmental impact report or negative declaration. Notice shall be given to all organizations and individuals who have previously requested such notice and shall also be given by at least one of the following procedures: [¶] (a) Publication, no fewer times than required by Section 6061 of the Government Code, by the public agency in a newspaper of general circulation in the area affected by the proposed project. [¶] (b) Posting of notice by the public agency on- and off-site in the area where the project is to be located. [¶] (c) Direct mailing to the owners of contiguous property as such owners are shown on the latest equalized assessment roll. [¶] The alternatives for providing notice specified in subdivisions (a) to (c), inclusive, shall not preclude a public agency from providing additional notice by other means if such agency so desires, nor shall the requirements of this section preclude a public agency from providing the public notice required herein at the same time and in the same manner as public notice otherwise required by law for such project."

[5]The state CEQA Guidelines also authorize and encourage agencies to consult with the public early in the EIR process as a way of avoiding controversy or resolving potential problems. (Cal. Admin. Code, tit. 14, § 15083.)

21166, subdivision (a), once an agency has prepared an EIR, no subsequent EIR is required unless substantial changes are proposed in a project that will require major changes in the EIR. If a subsequent or supplemental EIR is necessary, however, the state CEQA Guidelines require that the later EIR receive the same circulation and review as the initial EIR. (Cal. Admin. Code, § tit. 14, §§ 15162, 15163; see *Mira Monte Homeowners Assn.* v. *County of Ventura* (1985) 165 Cal.App.3d 357, 362, fn. 7, 363 [212 Cal.Rptr. 127]; *Sutter Sensible Planning, Inc.* v. *Board of Supervisors* (1981) 122 Cal.App.3d 813, 822 [176 Cal.Rptr. 342].)

As one commentator has noted, "the 'privileged position' that members of the public hold in the CEQA process . . . is based on a belief that citizens can make important contributions to environmental protection and on notions of democratic decision-making . . . ." (Selmi, *The Judicial Development of the California Environmental Quality Act* (1984) 18 U.C. Davis L.Rev. 197, 215-216.) "CEQA compels an interactive process of assessment of environmental impacts and responsive project modification which must be genuine. It must be open to the public, premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently described project, with flexibility to respond to unforeseen insights that emerge from the process." (*County of Inyo* v. *City of Los Angeles* (1984) 160 Cal.App.3d 1178, 1185 [207 Cal.Rptr. 425].) In short, a project must be open for public discussion and subject to agency modification during the CEQA process. (*Ibid.*) This process helps demonstrate to the public that the agency has in fact analyzed and considered the environmental implications of its action. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 86 [118 Cal.Rptr. 34, 529 P.2d 66].)

■ Turning now to plaintiffs' complaint, we apply the established principle that "a general demurrer admits the truth of all material factual allegations in the complaint [citation]; . . . the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; accord *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].) "[I]f there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause of action, a demurrer should not be sustained without leave to amend." (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].)

The gravamen of plaintiffs' first cause of action is that the district violated section 21166, subdivision (a) by failing to file a subsequent EIR to reflect

the substantial changes made in the theater in the district's contract with West. Because plaintiffs were not notified of those changes, they assert that they should not be bound by the 180-day limitation period set forth in subdivision (a) of section 21167.

Two matters are clear at the outset of our analysis. First, the complaint alleges a cause of action for violation of CEQA, and second, if the provisions of section 21167, subdivision (a) are applied literally, the action is barred.

■ It cannot be doubted that some of the changes allegedly made in the project by the contract between the district and West could be characterized as substantial enough to require the district to file a subsequent EIR to assess their environmental effects, as required by section 21166, subdivision (a). Certainly, an increase from six to ten acres in the size of the project, a 200 percent increase in seating capacity, and the acoustic effects of moving the stage to face the single-family dwellings north of the fairgrounds were sufficiently important to require consideration of their effects in a later EIR. (Cf. *Mira Monte Homeowners Assn.* v. *County of Ventura, supra,* 165 Cal.App.3d 357, 364-365 [discovery after completion of the EIR that previously unidentified rare plant species might be endangered by the project required the filing of a subsequent EIR].) The district's failure to address these changes in a subsequent EIR violated section 21166, subdivision (a).

■ It is equally clear that the complaint was filed more than 180 days following the commencement of construction of the theater. Although construction began in February 1983, the complaint was not filed until January 20, 1984. At first blush, therefore, the action seems barred.

But plaintiffs make an argument which persuades us that the statute must be interpreted to the contrary—only then will its purpose be fulfilled. They alleged that they did not know of the changes made in the project by the contract with West, and could not with reasonable diligence have discovered them, within 180 days from the time construction of the theater commenced because the district did not make the changes public and did not give notice that it had determined that these changes did not require a subsequent EIR, if such a determination was in fact made. Thus, when construction began, plaintiffs expected the project approved by the district to be the same one analyzed in the EIR, and they had neither actual nor constructive notice to the contrary.

We agree that the action should not be barred simply because of plaintiffs' failure to file their action alleging a violation of CEQA within 180 days of

the time construction of the theater began. The failure of the district to file a subsequent EIR in violation of section 21166, subdivision (a) deprived plaintiffs and the public of the opportunity to participate in the evaluation of the environmental effects of the project as finally approved. CEQA stresses the need for such participation. It provides for public notification that an EIR is in preparation, or that the agency has decided that a project will not have a substantial effect on the environment and will not require an EIR. (§ 21092.) The completed report is available for public inspection. (§§ 21105, 21108, subd. (c).) Public notification serves the public's right "to be informed in such a way that it can intelligently weigh the environmental consequences of any contemplated action and have an appropriate voice in the formulation of any decision." (*Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 804 [161 Cal.Rptr. 260].) This public participation assists the agency in weighing mitigation measures and alternatives to a proposed project. (§§ 21100, 21151.) As the court stated in *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 192-193 [139 Cal.Rptr. 396], "[o]nly through an accurate view of the project may affected outsiders and public decision-makers balance the proposal's benefit against its environmental cost, consider mitigation measures, assess the advantage of terminating the proposal . . . and weigh other alternatives in the balance. An accurate, stable and finite project description is the *sine qua non* of an informative and legally sufficient EIR." Thus, "[t]he defined project and not some different project must be the EIR's bona fide subject." (*Id.*, at p. 199.)

Here, plaintiffs allege that the theater project was the subject of an EIR but that the actual project built differed substantially from the facility described in the EIR. The lack of public notice that the agency had authorized these substantial changes compromised the goal of public participation in the environmental review process. In fact, the agency's failure to prepare a supplemental or subsequent EIR effectively deprived the public of any meaningful assessment of the actual project chosen by the agency. (*Mira Monte Homeowners Assn.* v. *County of Ventura, supra,* 165 Cal.App.3d at p. 365.) Indeed, the commencement of a project in these circumstances is more misleading than if the agency had prepared no EIR, since the public might justifiably but erroneously assume that the project being built is the one discussed in the EIR. (Cf. *Coalition For Canyon Preservation* v. *Bowers* (9th Cir. 1980) 632 F.2d 774, 779 [63 A.L.R.Fed 1] [citizens have right to assume that public officials will comply with applicable environmental law].) As a result, the public would fail to challenge the agency's noncompliance with CEQA within time limitations measured from commencement of construction.

In this situation, the primary duty to comply with CEQA's requirements must be placed on the public agency. " 'To make faithful execution of this duty contingent upon the vigilance and diligence of particular environmental plaintiffs would encourage attempts by agencies to evade their important responsibilities. It is up to the agency, not the public, to ensure compliance with [CEQA] in the first instance.' " (*County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d at p. 205.)

It does not follow, however, that an agency's failure to comply with CEQA may be challenged at any time without limitation. Plaintiffs suggest that their action was timely because it was filed a few days before the expiration of 180 days after the first concert was held at the theater on July 27, 1983. They alleged that they lacked actual or constructive notice of the changes before that time.

We reject plaintiffs' position as contrary to the Legislature's intent. By providing in section 21167, subdivision (a) that the 180-day limitation period begins to run from the time a project is commenced, the Legislature determined that the initiation of the project provides constructive notice of a possible failure to comply with CEQA. Such a notice is a substitute for the public notification measures set forth in section 21092.

We can give effect to the statute, while simultaneously vindicating the Legislature's goal of promoting public comment on projects that may have environmental significance, by holding that the phrase "commencement of the project" in subdivision (a) of section 21167 refers to the project described in the EIR and approved by the agency. However, if the agency makes substantial changes in a project after the filing of the EIR and fails to file a later EIR in violation of section 21166, subdivision (a), an action challenging the agency's noncompliance with CEQA may be filed within 180 days of the time the plaintiff knew or reasonably should have known that the project under way differs substantially from the one described in the EIR. This interpretation is consistent with the Legislature's intent that CEQA "be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

Because we review an order sustaining a demurrer without leave to amend in this case, we have to accept the complaint's material factual allegations as true. Plaintiffs alleged that they neither knew nor could with reasonable diligence have discovered that a cause of action had accrued to them until 180 days before the date they filed their complaint. While a trier of fact

may resolve the issue of plaintiffs' actual or constructive knowledge to the contrary, that is not our task as a reviewing court.

Accordingly, we reverse the judgment of the Court of Appeal insofar as it affirms the trial court's order dismissing the plaintiffs' first cause of action.

Bird, C. J., Broussard, J., and Grodin, J., concurred.

**MOSK, J.**—I dissent.

The majority interpret the relevant statutory provisions properly, but they err in analyzing the complaint.

The law is clear that if a public agency makes substantial changes in a project after filing an environmental impact report (EIR) and fails to file the supplemental EIR those changes require, an action challenging the agency's noncompliance with the California Environmental Quality Act (CEQA) "must be filed within 180 days of the time the plaintiff knew or should have known that the project under way differs substantially from the one described in the EIR." Assuming arguendo these plaintiffs did not actually know of the variations—which is difficult to believe—the question is when they should have known that the amphitheatre under construction differed substantially from the project described in the EIR.

In ruling on a general demurrer we must accept as true "all the material factual allegations in the complaint." We are not, however, compelled to accept as sound the various legal conclusions set forth in the complaint. Nor are we prohibited from rationally reading the factual allegations.

The majority obviously harbor some reservations about the validity of the complaint, for their opinion observes that "'if there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause of action, a demurrer should not be sustained without leave to amend,'" citing *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]. In this case, however, plaintiffs were given leave to amend and elected instead to stand on their complaint. In such situations we construe a complaint strictly, and we presume the plaintiffs have stated "as strong a case as [they] can." (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; see also *Sarro* v. *Retail Store Employees Union* (1984) 155 Cal.App.3d 206, 211 [202 Cal.Rptr. 102].) Thus the majority

are saddled with the complaint as it is, and not as it conceivably might be strengthened with the benefit of 20/20 hindsight.

Plaintiffs filed their complaint on January 20, 1984. That complaint was untimely under the rule now adopted if it was filed more than 180 days after plaintiffs knew or should have known of the substantial changes in the amphitheater plans. January 20, 1984, is 180 days after July 24, 1983. Therefore, if plaintiffs should have known of the changes by July 23—or any earlier date—their complaint was untimely.

But, maintain plaintiffs, the defendants "concealed and misrepresented" facts material to their knowledge. We are not told how or in what manner the concealment was accomplished in connection with construction that took place in public view and, as alleged in the complaint, within sight of the plaintiffs who "have homes adjacent or proximate to the Orange County Fairgrounds."

Plaintiffs concede that construction commenced in February 1983, and that the amphitheater was fully completed in time for a public concert on July 27. If the amphitheater was ready for use on July 27, it is impossible to rationally conceive a set of facts under which plaintiffs would not have been aware of the substantial changes more than three days earlier. Indeed, their complaint is deficient in alleging no such unusual facts.

Rome was not built in a day. Nor was this $11 million project built in three days. Plaintiffs concede that the amphitheater was constructed in a corner of the Orange County Fairgrounds, and that this was their home neighborhood. They allege that the amphitheater occupied 10 acres instead of the originally projected 6, and that the stage now faced a direction different from that originally proposed.

A court must be deemed naive if it is asked to believe these neighbors failed to observe construction on 10 acres rather than 6 until after the first public concert. Justice may wear a blindfold, but these plaintiffs do not allege they were similarly handicapped.

My concern with the majority result is three-fold. First, it puts these defendants to the time and expense of a trial and unnecessarily burdens the courts. Second, and more importantly, under Parkinson's Law the majority opinion will inevitably encourage numerous frivolous challenges to public or private projects after the statutory period has run. Under this new prevailing theory, complainants may await completion of a project that has been under construction for months before challenging its propriety. All

they must do is baldly allege, without any supporting facts, that they were blissfully unaware of the construction violation, even if the project was built next door. And finally, what will be the ultimate result of these tardy lawsuits—court orders to tear down completed buildings? In short, I fail to see any economic or environmental value in permitting litigation beyond the statutory period.

I would hold that the complaint was untimely and the demurrer was properly sustained.

Lucas, J., and Panelli, J., concurred.

Respondents' petitions for a rehearing were denied January 22, 1987.