[No. E030566. Fourth Dist., Div. Two. Aug. 9, 2002.]

STEWART D. CUMMING et al., Plaintiffs and Respondents, v.
CITY OF SAN BERNARDINO REDEVELOPMENT AGENCY,
Defendant and Appellant.

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard, Christopher D. Lockwood and Delmar Williams for Defendant and Appellant.

Law Offices of James DeAguilera and James DeAguilera for Plaintiffs and Respondents.

OPINION

GAUT, J.—

### 1. *Introduction*

The Redevelopment Agency of the City of San Bernardino (the Agency) appeals from a judgment granting a petition for writ of mandate. The petition asserted that the Agency had violated CEQA, the California Environmental Quality Act, when it approved the sale of redevelopment property by the Agency to California Bio-Mass, Inc. (Bio-Mass). Stewart D. Cumming and

the Cimarron Ranch Neighborhood Association (Cimarron), a group of 378 homeowners, were the petitioners below and are the respondents on appeal. We reverse on the grounds the petition is barred by the 180-day statute of limitations set forth in Public Resources Code section 21167.[1] We also deny petitioners' request for judicial notice.[2]

## 2. Factual and Procedural Background

We derive the following account from the court record and the administrative record as contained in the joint appendix supplied by the parties.

The 10-acre parcel, the subject of this action, is part of the Northwest Redevelopment Project, 1477.9 acres controlled by the Agency and located in the City of San Bernardino (City). In 1982, the Agency prepared an environmental impact report (EIR) for the Northwest Redevelopment Project. The 1982 EIR anticipated the project would include industrial uses, such as light manufacturing, warehouse and storage, repair facilities, and "heavier industrial or extraction uses subject to further environmental analysis of specifically proposed projects." Redevelopment was planned to occur over a 35-year period.

In February 1999, Bio-Mass, an industrial recycling company, made an offer to purchase the subject 10 acres. Bio-Mass planned to build new corporate headquarters and a drop-off facility for recycling activities. Actual processing of the recyclable material would occur elsewhere.

The Agency negotiated with Bio-Mass about the sale and development of the property and prepared a disposition and development agreement, dated September 1999. The agreement provides that Bio-Mass's proposed development of the property is consistent with the Northwest Redevelopment Project plan. The agreement also provides that the City's building and zoning requirements apply to Bio-Mass's proposed development and that approvals by other government agencies may be required.

On October 4, 1999, and October 11, 1999, as required by Health and Safety Code sections 33431 and 33433 for the sale of redevelopment property, the City and the Agency published a notice of a public hearing concerning approval of the agreement. The supporting documents, available for public review, described the proposed project as being "an organic recycling and transfer facility" collecting "green waste, wood waste, wallboard, paper, C&D material, pre-post food material and liquids" for processing at another site. On October 18, 1999, the Agency and the City both

[1]All further statutory references are to the Public Resources Code unless otherwise stated.
[2]Evidence Code section 452.

adopted resolutions approving the sale of the land to Bio-Mass and also finding no further environmental review was presently necessary under CEQA in connection with the Agreement.

In November 1999, Bio-Mass applied to the City for a conditional use permit (CUP) allowing solid-waste collection. The City prepared an initial CEQA study and a revised initial study, recommending the preparation and adoption of a mitigated negative declaration.

According to the petitioners, they first learned about the proposed Bio-Mass development on December 13, 1999, in connection with the CEQA review for the CUP.

The City Planning Commission approved the CUP on March 21, 2000. The City adopted the mitigated negative declaration on April 17, 2000. But the CUP has since been rescinded.

In the interim, the sale of the property to Bio-Mass has been completed.

On May 4, 2000, petitioners Cumming and Cimarron filed their petition for writ of mandate.

In their second cause of action, the only cause of action remaining against the Agency, the petitioners allege, somewhat unintelligibly, that the Agency had approved the sale of the property to Bio-Mass for use as a recycling transfer facility for solid waste and authorized and gave its approval for Bio-Mass to apply for a CUP for the facility. The petitioners further allege these two actions were "projects" under CEQA and that the Agency failed to comply with CEQA by not preparing a new EIR, evaluating the "solid waste transfer facility" as a "substantial change" from the Northwest Development Project, especially in view of more stringent environmental regulations adopted since 1982.

The court granted the petition on the second cause of action and issued a peremptory writ directing the Agency to set aside its finding of October 18, 1999, that no further environmental review was required at that time; to comply with CEQA, perhaps by preparing a subsequent or supplemental EIR; and to reconsider its decision that the Bio-Mass property be developed as a recycling transfer facility.

### 3. Timeliness of the Petition for Writ of Mandate

The only issue argued by the Agency on appeal is that the petition for writ of mandate was not timely because it was filed more than 180 days

after October 18, 1999, the date the Bio-Mass sale was approved and the City and the Agency made the finding that no further environmental review was then required for approval of the agreement. In opposition, respondents argue that they did not know about the scope of the agreement until December 13, 1999, when they first learned about Bio-Mass's pending application for the CUP. Because the facts are not disputed, we review the issue de novo.[3]

As part of a redevelopment project, the Bio-Mass property is subject to special rules under CEQA. First, in contrast to petitioners' allegations that the Agency's actions constituted discrete "projects," the 1982 Northwest Redevelopment Project plan is deemed to be a single project.[4] Additionally, although the redevelopment plan contemplated that there could be "further environmental analysis of specifically proposed projects," CEQA provides that subsequent environmental review of a redevelopment project is limited: "[F]urther environmental review . . . in furtherance of . . . a redevelopment plan shall be conducted if any of the events specified in Section 21166 have occurred."[5] Section 21166 states that a subsequent or supplemental EIR shall be required if there have been substantial changes in the project, changes in circumstances, or new information triggering the need for a new further environmental review.[6] The CEQA Guidelines elaborate: "An EIR on a redevelopment plan shall be treated as a program EIR with no subsequent EIRs required for individual components of the redevelopment plan unless a subsequent EIR or a supplement to an EIR would be required by Section 15162 or 15163."[7] Sections 15162 and 15163 of the CEQA Guidelines repeat the factors identified in section 21166 as to when another EIR should be prepared for a redevelopment project.[8]

The CEQA Guidelines also provide a subsequent or supplemental EIR or a subsequent negative declaration shall be subject to the requirements of public notice and public comment.[9] But neither the statutes nor the CEQA Guidelines require a redevelopment agency to afford public notice and comment for the agency's decision not to conduct further environmental review of an individual component of a redevelopment plan.

---

[3] *Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478].

[4] Section 21090; *Meaney v. Sacramento Housing & Redevelopment Agency* (1993) 13 Cal.App.4th 566, 584 [16 Cal.Rptr.2d 589].

[5] Section 21090.

[6] Section 21166.

[7] California Code of Regulations, title 14, section 15180.

[8] California Code of Regulations, title 14, sections 15162 and 15163.

[9] California Code of Regulations, title 14, sections 15162, subdivision (d), and 15163, subdivision (c).

Here, the Agency's sale of the subject 10 acres to Bio-Mass needed no additional public notice than that given as required by Health and Safety Code sections 33431 and 33433. The documents pertaining to the sale and describing the full scope of the project, including the proposed collection of solid waste, were available for public review before the hearing on October 19, 1999. Furthermore, as the record demonstrates, the petitioners successfully raised their objections to the solid waste recycling collection center in their challenge to the City's approval, now rescinded, of the CUP. We cannot predict what use Bio-Mass will be permitted ultimately to make of the subject property. But, based on the foregoing analysis, no defect existed in the notice given by the Agency in connection with the sale and the decision not to conduct additional environmental review before the sale.

We recognize that the Agency focuses its argument not on the legitimacy of the public notice given of the sale without further environmental review, but on the limitations issue. Notwithstanding the validity of the public notice, the Agency maintains the petitioners' challenge is too late. We agree.

The governing statute of limitations for CEQA actions is section 21167. Subdivision (a) provides a special 180-day statute of limitations for CEQA challenges to a public agency's approval of a project "which may have a significant effect on the environment without [the agency's] having determined whether the project may have a significant effect on the environment." The same limitations period applies "if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." In the present case, if we accept the petitioners' characterization of the Bio-Mass sale as a "project," the Agency approved the sale without further environmental review on October 19, 1999. Before that date, the Agency published notice of the sale as required by the Health and Safety Code. Therefore, the limitations period for a CEQA challenge of the Agency's approval of the sale began to run on October 19, 1999.

The petitioners rely on two cases, neither of which assists them. The first case, *Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.*,[10] is distinguishable. In *Concerned Citizens*, the court held a legal challenge could be filed within 180 days of when the complaining party either knew or reasonably should have known of substantial changes in the construction of an outdoor stadium. But *Concerned Citizens* did not involve redevelopment property. Therefore, it did not address the special CEQA rules applicable to redevelopment property. Also, *Concerned Citizens* involved substantial changes in a public works project without any notice to

---

[10]*Concerned Citizens of Costa Mesa v. 32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 937-939 [231 Cal.Rptr. 748, 727 P.2d 1029].

the public. The petitioners allegedly did not find out about the enlargement of the stadium until after the first noisy concert was held.

The present case differs from *Concerned Citizens* because the scope of the Bio-Mass project was disclosed in the public documents made available for review before the sale was approved. The public record gave notice sufficient to start the statute of limitations running.[11] Therefore, if the petitioners found any reason to object, they should have challenged the sale's approval within 180 days of October 18, 1999.

*Endangered Habitats League, Inc. v. State Water Resources Control Bd.*[12] also does not support the petitioners because there an action was filed within 30 days of final approval of a project, not more than 180 days after approval, as here. Nor did the case involve redevelopment property.

### 4.  *Disposition*

Based on our independent review, we conclude the trial court was wrong both when it found the public notice of the sale was inadequate and in its application of the holding of *Concerned Citizens*, which we deem to be inapplicable to the factual scenario of this case. We reverse and vacate the trial court's award of attorney's fees to the petitioners. The Agency shall recover its costs on appeal.

Hollenhorst, Acting P. J., and Ward, J., concurred.

---

[11]*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902 [177 Cal.Rptr. 657].
[12]*Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227, 234, 240-243 [73 Cal.Rptr.2d 388].